No. 15,644.

GREAT AMERICAN INDEMNITY COMPANY ET AL. *v.*
INDUSTRIAL COMMISSION ET AL.
(162 P. [2d] 413)

Decided September 24, 1945.

Messrs. WOLVINGTON & WORMWOOD, for plaintiffs in error.

Mr. H. LAWRENCE HINKLEY, Attorney General, Mr. DUKE W. DUNBAR, Deputy, BARBARA LEE, Assistant, Messrs. CHUTKOW & ATLER, for defendants in error.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

THIS case arises under our Workmen's Compensation Act. The employer and his insurance carrier ask us to review and reverse a judgment of the district court sustaining a compensation award which the Industrial Commission made in favor of Edward Pankau. The claim for compensation is based upon the provisions of section 352, chapter 97, '35 C.S.A. The sole question for determination is whether the disability suffered by reason of an injury to an eye should be determined on the basis of corrected or uncorrected vision.

The facts are that Edward Pankau, while an employee of Anthony Hobson, suffered an injury to his right eye by reason of an accident arising out of and in the course of his · employment. The Great American Indemnity Company was the insurance carrier, and it admitted liability for, and paid compensation during, the time the claimant was unable to work. The employee thereafter filed his claim for an alleged permanent disability occasioned by the injury to his eye and sought the statutory award specified in section 352, supra, for total blindness in one eye. The insurance carrier admitted its liability for payment of compensation for forty per cent loss of vision of the right eye. This admission of the insurance carrier as to the forty per cent liability was

approved by the Industrial Commission. Thereafter claimant filed a petition to reopen the claim, and upon a hearing of this petition a supplemental award was entered by the Industrial Commission. A referee of the Industrial Commission found that claimant "has suffered *total blindness of his right eye,* which, with the aid of a correcting lens, can be reduced to a loss of forty per cent of the vision of the said right eye," and awarded the full statutory allowance for "total blindness in one eye," which finding and award was subsequently "approved, affirmed and adopted as the order of the commission." Thereafter, under proper procedure, a complaint was filed in the district court to set aside the award, and upon trial the award of the Industrial Commission was upheld.

The only evidence necessary for our consideration in the determination of the case is found in a report of an examination of the claimant's eye by one Dr. James M. Shields reading in part as follows:

"On July 25, 1944, I examined the eye of Mr. Edward Pankau, aged 44 years, of 2727 York Street, Denver. This patient was treated by Dr. George Richie and was sent to this office on September 17, 1940. This patient had sustained a lime burn of the right cornea and was treated in this office for some time.

"When I saw him in February 1943 he gave me vision for the right eye of 6/12. When I examined him on July 25, 1944, the best vision I could get was 6/16 with a 0.25-2.00 axis 127. The fellow eye gave 6/5 vision with a small correcting lens. I doubt if the injured eye will show any change after this length of time. The best vision I can get for him is 20/60 with a correcting lens which gives him about 40% of loss. If the vision is to be figured without a lens it would show an industrially blind eye, that is, less than 20/200."

It is undisputed that the claim arises under section 352, chapter 97, supra, the pertinent parts of which read: "In case an injury results in a loss set forth in

the following schedule, the injured employee shall, in addition to compensation to be paid for temporary disability, receive compensation for the period as specified, to wit: * * * Total blindness of one eye, 104 weeks."

It is contended that in the determination of this matter subdivision (f) of section 352, supra, is applicable, and, as we understand, it is under the provisions of this subsection that the employer and insurance carrier base their contention that the amount now due claimant is forty per cent of one hundred and four weeks or 41.60 weeks, for which they admitted liability. Subsection (f) reads: "Where an injury causes the loss of use or partial loss of use of any member or members specified in the foregoing schedule, the commission may determine the disability suffered and the amount of compensation to be awarded, by awarding compensation which shall bear such relation to the amount stated in the above schedule for the loss of a member or members as the disabilities bear to the loss produced by the injuries named in the schedule and such amount shall be in addition to compensation for temporary disability, or the commission may award compensation under the permanent partial disability section of this statute as the commission in its discretion may determine from the particular facts in each case."

It also is contended by the employer and the insurance carrier that since section 330, chapter 97, '35 C.S.A. providing for medical and other aid has been amended by chapter 239, S. L. 1941, so as to specifically require the employer in cases of loss of vision to furnish such glasses as may be required, that this is an expression of legislative intent to so modify the provisions of section 352, supra, as to reduce the liability of the employer and insurance carrier in such eye injury cases to loss of vision resulting after a claimant has been fitted with corrective lenses.

We are not persuaded that a consideration of subsection (f) of section 352, supra, is necessary in our determination of the issues presented, and we do not believe that it has any application to the factual situation here. As we construe this subsection, it is to be limited to cases where the injury results in the loss of use or partial loss of use of another member. In *Industrial Commission v. General Accident Co.*, 71 Colo. 115, 204 Pac. 338, we so construed it. In that case, where the accident resulted in the loss of a thumb, the index finger, and the middle finger at the proximal joint, the contention of the insurance carrier was that the claimant should be limited to the specified statutory number of weeks for the three members lost. It was the contention of the Industrial Commission and the claimant that, under the testimony to the effect that the use of the hand from which the three members were lost was seventy per cent destroyed, the basis of compensation should be seventy per cent of the number of weeks allowed for the loss of a hand, and this was the basis of the Industrial Commission's award. The district court entertained a different view and ordered the award of the commission set aside. Upon review we reversed the judgment and approved the method adopted by the Industrial Commission in computing the amount of the award to claimant. This decision has never been modified or set aside, is the law in this jurisdiction, and we see no reason for modifying or changing it. It aptly illustrates the correct construction to be given subdivision (f), section 352, supra.

Our decision in *Jewell Collieries v. Kenda,* 110 Colo. 394, 134 P. (2d) 206, arose under section 355, chapter 97, '35 C.S.A., which provides the compensation to be awarded an employee who comes under the provisions of the Workmen's Compensation Act and has had the misfortune of losing the sight of one eye prior to the accident which occasioned total blindness in the other eye. The particular provision of section 355, supra, in-

volved in the Jewell Collieries case reads: "If the employee has previously lost the vision of one eye and loses the vision of the remaining eye, he shall receive compensation for 312 weeks."

This was the basis of the compensation awarded. A portion of the supplemental award is set forth in the opinion and reads as follows:

"That for many years prior to claimant's injury of October 24, 1940, he had suffered from a congenital anomaly of the left or uninjured eye which caused that eye to be industrially blind. The Commission further finds from the evidence that both before and since the claimant's injury his left eye could be restored to useful industrial vision with the aid of a corrective lens.

"*The Commission here points out that it has been its practice to award compensation on the basis of uncorrected vision.* Many eye injuries which reduce uncorrected vision substantially can be corrected. However, to do so requires the wearing of a lens and many employments are not open to those who are forced to wear glasses. *Therefore, to compensate for the handicap the injured is compensated on a basis of uncorrected vision.*" (Italics ours.)

In approving the supplemental award of the commission we said: "Another contention—perhaps the major one—is that both prior and subsequent to the accident claimant had and now has and enjoys the vision of his left eye. The commission found, on competent testimony, 'that eye to be industrially blind.' According to the testimony of the employer's medical expert, the vision of the left eye uncorrected 'would be lower than the minimum vision, which is regarded as depriving the individual entirely of industrial vision in that eye.' It is urged that in the determination of the vision of the left eye, its correction by lenses must be considered. The commission found 'that both before and since the claimant's injury his left eye could be restored to useful industrial vision with the aid of a corrective lens.'

Whether correction of the eye in the determination of loss of vision was a necessary consideration, was a problem which we had before us in the case of *Platt-Rogers v. Industrial Commission*, 101 Colo. 458, 74 P. (2d) 673, *in which, under the circumstances, we at least impliedly favored the practice of the commission in compensating on the basis of uncorrected vision.* The rationale for this practice is stated in the supplemental award quoted above. That the commission for some time has followed such a practice is a factor to be considered in construing the pertinent portion of section 355, supra, when the law thereon is silent. According to the statement of the commission, many employments are not open to those who are forced to wear lenses. * * * We are, however, unable to say, from the record, that the commission was not warranted in relying upon the uncorrected vision in the determination of the loss of vision of the left eye. * * *" (Italics ours.)

We are unable to perceive any valid reason why, if corrective lenses are not used as a basis of awarding compensation under section 355, they should be used as a basis upon which to compute awardable compensation under section 352, chapter 97, '35 C.S.A.

In *Platt-Rogers, Inc. v. Industrial Commission*, 101 Colo. 458, 74 P. (2d) 673, an action arising under section 355, chapter 97, '35 C.S.A., where it was contended that corrective lenses would increase the vision in the remaining eye and that the Industrial Commission refused to fix its award upon the basis of improvement by the use of corrective lenses, we said: "We do not say that there might not be a state of facts which would make such correction an important factor in determining the question whether under such state of facts the reduction of loss by the use of glasses is sufficient to remove a case out of the class of total industrial loss. But it would not be in consonance with the declared liberal nature of our Workmen's Compensation Act for us to indulge in a presumption that, without more, the cor-

rective glasses would render the employee partially efficient as an industrial worker when without corrective glasses there would be a total industrial loss. To reverse the judgment in this case would improperly create such a presumption; for we search the present record in vain for substantial evidence tending to show that the aforesaid correction would in any appreciable degree enhance the working power of the particular employee beyond what it is without the correction."

We have made a rather exhaustive search of the Workmen's Compensation Acts (Workmens Compensation Statutes, Schneider) in force in the various states for the purpose of finding one identical in its provisions with section 352, supra, but without success. We, however, did find statutes in several jurisdictions which are similar to ours and which had been interpreted by the courts therein, and we believe these to be helpful in arriving at a proper determination in this case.

In *Shaw v. Rosenthal,* 112 Ind. App. 468, 42 N. E. (2d) 383, the court had before it an appeal from an award of the Industrial Board of Indiana whereby the claimant was granted compensation on the basis of "30 per cent permanent partial impairment to his left eye." The evidence was that the impairment was thirty per cent without glasses, but only ten per cent with glasses. The Industrial Board based its award on the impairment of thirty per cent, and this award was affirmed. In affirming the award, the court said: "While it is true as appellant urges, that the general purpose of the Workmen's Compensation Act is to compensate for functional loss, *nevertheless those parts of the act which fix a definite amount of compensation for a specific injury are arbitrary in nature and are based not on loss of earning capacity but on actual physical loss."* (Italics ours.)

In *Kelley v. Prouty,* 54 Idaho 225, 30 P. (2d) 769, the court had under consideration the provisions of the Idaho Workmen's Compensation Act in which is to be found provisions for compensation on account of dis-

ability or impairment of ability to work, and also for indemnity for the loss of a member or the physical impairment of such, and with reference to the proper basis for determining whether the use of corrective lenses should be considered in eye injury cases it was said: "The compensation law also provides for specific indemnities for certain injuries, as set forth in sec. 43-1113, *when disability for work by reason of the loss of the various members of the body enumerated is not to be taken into consideration. (Panico v. Sperry Engineering Co.,* 113 Conn. 707, 156 Atl. 802.) But the general theory and spirit of the act, *except for the specific indemnities set forth in sec. 43-1113,* is to the effect that compensation is provided to make good the loss of the earning power or capacity to work on account of the injury. In other words, our compensation act is to the same effect as the laws of those states holding, as indicated in the above-cited cases, that compensation is to be paid on account of disability or impairment of ability to work, or for loss of earning power, and not as indemnity for the loss of a member or physical impairment as such, *except the indemnities specified in sec. 43-1113;* that then the use of corrective glasses may and should be taken into consideration in determining the extent of the disability. We believe that the decisions above cited are controlling and state the correct rule to be followed in this state by reason of the nature of our compensation act, and we so hold. Justly, industry should bear the burden of the loss of earning power or disability to work due to injury sustained by the employee, but, if the employee by means of a simple scientific device such as glasses is able to see just as well as he ever did, is capable of performing the same kind or class of work, and does actually carry on in the field of labor without, in any sense, being disabled for work, it does not appeal to a sense of justice to say that he has a total and permanent loss of sight in both eyes or is blind and that he should require from the industry com-

pensation for total permanent disability for the remainder of his life. *That does not mean, and we do not hold, that corrective glasses, in the event of the loss of an eye, or other artificial means, shall or may be permitted to be taken into consideration in fixing the specific indemnities set forth in sec. 43-1113, for in determining those specific indemnities, the loss of earning power or capacity to work is not to be considered.*" (Italics ours.)

*Livingston v. St. Paul Co.*, 203 Minn. 62, 279 N. W. 829, was a proceeding under the Workmen's Compensation Act with no dispute as to the claimant's right to compensation, but an irreconcilable difference between the employer and the employee as to the amount of compensation to be awarded for an injury to the employee's right eye. It was agreed that without the aid of glasses the claimant had a 20/100 vision in his right eye, and with the aid of glasses the vision was normal. The employer contended that the award should be based on the percentage of loss when the vision was aided by corrective lenses. The referee held otherwise.

The Minnesota statute "contains a schedule of compensation for injuries sustained," under which the award was made, and it provides, "For the loss of an eye, sixty-six and two-thirds per centum of the daily wage at the time of injury during one hundred (100) weeks." There is a subdivision of the act which permits the award of a percentage where the entire loss of vision has not occurred, but nothing with reference to the use of corrective lenses. The court held that corrective lenses were not to be used in determining the amount of the award, and in this connection said: "We see nothing in the act indicating an intention on the part of the legislature that disability after correction is to be the basis for awarding compensation where there has been an eye injury. If such was its intention, the act could, and no doubt would, have been drafted so to provide. We should not by construction put into the

law a provision it does not contain or read into it a meaning not intended by the legislature. If the act is faulty, the correction should be by the legislature and not by the court. We can see no more logic in holding that the legislature intended to base disability in an eye case after correction than in holding that in a leg or. arm case compensation should be awarded on the extent of disability after the attachment of a brace or any other appliance. The fact that glasses are required to restore vision is evidence of the permanency of the injury, and whether artificial means may partially or even wholly restore sight, it nevertheless cannot obliterate the effect of the accident causing the injury."

*Juergens Bros. Co. v. Industrial Commission,* 290 Ill. 420, 125 N. E. 337, was an action under the Workmen's Compensation Act for injuries to an eye. The Workmen's Compensation Act of Illinois provided, inter alia, as follows: "In addition to compensation during the period of temporary total incapacity for work resulting from such injury, * * * for the loss of the sight of an eye, fifty per centum of the average weekly wage during 100 weeks."

The evidence tended to indicate that with the aid of corrective lenses there was normal vision at a fixed distance in the injured eye but that the employee could not use both eyes in conjunction. The circuit court entered a judgment affirming the award of the Industrial Commission for compensation on the basis of the total loss of sight in the injured eye, and the supreme court reversed the judgment because it contained an order with reference to future payments due under the award, but with reference to the correctness of the award based on uncorrected vision, it was said:

"It is contended by plaintiff in error that Kaage has not suffered a total loss of vision but has only lost the power of accommodation, which by the use of glasses he may regain. The evidence shows that with the use of correcting glasses or lenses the applicant can see clearly

with the injured eye at a fixed distance. Such distance depends upon the character of the lenses or correcting glasses used. In other words, while with certain correcting glasses he can see clearly at fifteen feet, yet to see clearly at ten feet or at twenty feet he would require other lenses. * * * The question before this court is whether or not this man has for all practical uses and purposes lost his eye. The application of laws of this character should not be made to depend upon finespun theories based upon scientific technicalities, but such laws should be given a practical construction and application. For all practical purposes when a person has lost the sight of an eye he has lost the eye, and to say that the statute providing compensation for the loss of the sight of an eye does not apply here because of the remote possibility of Kaage losing his good eye, whereby he can through artificial means gain a certain amount of use of the injured member, is to place a construction on a remedial act which deprives it of all practical effect. Such could not have been the intention of the legislature in passing this act. It was said by this court in *Mark Manf. Co. v. Industrial Com.*, 286 Ill. 620 [122 N.E. 84], where the employee lost the greater portion of his hand: 'The fact that by the use of a mechanical appliance or some substitute for the hand the defendant in error is able to perform manual labor to some extent is not inconsistent with the complete loss of the use of the hand for practical work. "The incapacity to use need not be tantamount to an actual severance of the hand. It is enough that the normal use has been entirely taken away." [citing cases]' "

In *Alessandro Petrillo Co. v. Marioni*, 33 Del. 99, 131 Atl. 164, a workmen's compensation case in which the claimant suffered a permanent injury to the vision of his left eye, it was said:

"The sole question to be determined is whether in computing an award for a fractional loss of vision of a claimant, such award should be based upon the per-

centage of loss of vision without the use of glasses or whether such award should be based upon the percentage of loss of vision when such vision is aided and affected by the artificial means of a corrective lens.

"We see nothing in the act indicative of any intention on the part of the Legislature that a corrective lens should be considered in determining the loss of the fractional part of the vision of an eye. It is apparent from the act that the thing to be compensated is the loss of vision attributable to a permanent injury.

\* \* \*

"The very fact that artificial. instrumentalities such as glasses, braces, and artificial limbs are necessary to be used is in itself evidence of the permanency of the injury, but the use of the mechanism itself, although it may allow a member to function with entire normality, yet it cannot obliterate the effect of the accident causing the injury.

"The action of the Accident Board in basing the award on the loss of vision without the use of a corrective lens is amply supported by authority. [citing cases]"

*Otoe Food Products Co. v. Cruickshank,* 141 Nebr. 298, 3 N. W. (2d) 452, was a proceeding under the Workmen's Compensation Act by an employee for injuries suffered to his right eye. The evidence indicated that with corrective lenses the vision in the injured eye was appreciably increased, and it was contended that compensation should be based upon the vision obtainable with such lenses. In this connection we find that the court reached the same conclusion as was reached in *Livingston v. St. Paul Co., supra,* using almost the identical language quoted from that opinion.

*Burdine's Inc. v. Green,* 150 Fla. 361, 7 So. (2d) 460. An action under the workmen's compensation laws in which the employee sought compensation for permanent loss of vision in one of his eyes which, without corrective lenses, was more than eighty per cent and

which with the use of glasses could be reduced to about forty-four per cent. The award, on the basis of eighty per cent loss, was approved by the trial court. In the supreme court decision affirming the judgment of the circuit court we find the statement:

"It occurs to us however that the legislature did not intend that such artificial means should be taken into account in computing compensation and we have, in considering this aspect of the case, been impressed with the decision of the supreme court of New Jersey, Johannsen v. Union Iron Works, 97 N.J.L. 569, 117 A. 639, dealing with this subject. As there pointed out it could not be successfully argued that one who must wear glasses because of permanent injury to an eye is not handicapped and is as free in the use of his eyes as one who does not require artificial lenses to strengthen his vision.

"In the instant case it can hardly be denied that if the claimant uses the eye glasses made necessary by the accident he will always be impeded to some extent in any work that he does and the compensation, *which is in the nature of insurance,* as distinguished from damages, should, in our opinion, be allowed for the full period of one hundred weeks, the injury being total as well as permanent.

"It has been plausibly argued that decisions of the supreme court of New York construing the statute, very like the one in Florida, should be followed but our study of the briefs convinces us that there is law to the contrary in states where similar statutes also may be found. In making our choice of the decisions which we will follow we are inclined to align ourselves with those courts holding that the criterion for arriving at proper awards where there is injury to an eye is the percentage of that injury regardless of the use of artificial lenses."

■ We have not undertaken to quote from or cite decisions from all jurisdictions having statutes similar to those of Colorado, but we are persuaded that our own

decisions, as well as those from other jurisdictions with similar laws, in which it is held that compensation for eye injuries shall be computed without reference to the use of corrective lenses, is the better rule of authority. We believe also it is in keeping with the intent and purpose of our Workmen's Compensation Act and that the conclusion we have reached is in consonance with the humane and beneficent purposes of that act. Our Workmen's Compensation Act is highly remedial, and we have repeatedly held that it should be given a liberal interpretation and application in order to fully effectuate its purposes. If we should determine that corrective lenses should be considered in computing the compensation to be awarded an employee for an eye injury, then, under the same statute, should not the benefit which an injured workman might receive from the use of an artificial limb, if one of his legs were severed in an accident arising out of and in the course of his employment, be considered in fixing his compensation? Under the contention of the insurance carrier here, if one who had lost a limb could, with the aid of an artificial appliance, prosecute his work effectively, he would not be entitled to the statutory indemnity for the loss of the limb, but his compensation would be based upon his lack of earning capacity or lack of ability to perform services in the usual course of his business or vocation. Should we uphold this contention, we would thereby annul the beneficent purposes of the statute and in effect repeal it. This we cannot do.

 Counsel for the employer and insurance carrier urge upon us the effect of the 1941 amendment to section 330, chapter 97, '35 C.S.A., which specifically provides that in case of loss of vision the employer is required to furnish glasses. It is their contention that if the employer is required to furnish glasses, then the vision obtainable by their use when so furnished is the proper basis of computation and should inure to the benefit of the employer. We believe counsel would not

contend that because an injured workman could use an artificial limb provided at the employer's expense under the amended section 330, that the statutory allowance for the loss of the limb should be reduced; then as a corollary it follows that the effect of glasses in correcting vision should not be considered in connection with the awarding of the statutory allowance for blindness of an eye.

In connection with this question we have considered our decision in *Employers' Mutual Insurance Co. v. Industrial Commission*, 70 Colo. 228, 199 Pac. 482, and if that decision in anywise conflicts with the conclusion herein, it is expressly overruled.

The provisions of section 352, supra, afford an exact method for determining indemnity to be awarded an employee for the injuries therein specified when that loss occurs in an accident arising out of and in the course of his employment. The compensation therein provided is payable irrespective of one's ability to work and irrespective of his ability to earn. When an injury listed in this section results from an industrial accident, the compensation provided by the statute limits the amount of the award, both minimum and maximum, to which the injured employee is entitled. Our province is to construe and interpret the statute, any amendment or change in which is exclusively a matter for legislative consideration.

The judgment of the district court is right and accordingly is affirmed.