## No. 15,653.

Moffat Coal Company et al. *v.* Muncy et al.

(163 P. [2d] 201)

Decided October 29, 1945.

Messrs. Hawkins & Hawkins, for plaintiffs in error.

Messrs. JANUARY & YEGGE, Mr. H. LAWRENCE HINKLEY, Attorney General, Mr. DUKE W. DUNBAR, Deputy, BARBARA LEE, Assistant, for defendants in error.

*En Banc.*

MR. CHIEF JUSTICE BAKKE delivered the opinion of the court.

THIS is an industrial commission case in which the claimant was awarded compensation for and on account of temporary total disability, and for a loss equivalent to five per cent as a working unit for and on account of permanent partial disability resulting from injuries received in an accident admittedly arising out of and in the course of his employment. The district court affirmed the award. The employer and insurer seek reversal.

Two and one-half per cent disability due to the accident is conceded, but plaintiffs in error contend that there was no evidence to support the referee's award of five per cent permanent disability as a working unit, all due to the accident, and that the award was premature.

Claimant was injured November 4, 1942, while performing services for the Moffat Coal Company at its mine at Oak Creek. In the notice and claim for compensation, he states: "A timber fell out and struck me on the head knocking me on my face. My injury was to my forehead, right eye, nose and right hand."

The first hearing on the claim was held at Steamboat Springs April 8, 1943, where the employer introduced testimony tending to show that claimant had no disability. The claimant was not satisfied and offered to come to Denver at his own expense if the commission would refer him to a neurologist. Accordingly the commission referred him to Dr. Bluemel in Denver who was requested to examine claimant "and report whether or not there is any loss of vision * * * which might be

attributable to such injury and if so, estimate the degree of disability resulting therefrom." Dr. Bluemel examined claimant on May 3, 1943, and in the course of his examination suggested that claimant consult Dr. Long, an eye specialist, who was later requested by the commission to make said examination. Dr. Long reported on May 4, 1943: "All of the patient's ocular symptoms can be explained by the rather large refractive error. I do not find any likelihood that this refractive error resulted from the accident and regard it as a naturally occurring situation."

Another hearing was held at Delta on October 4, 1944. At this hearing claimant, in response to the question, "And your eyesight is no different from before?" replied, "No sir." The commission then, on October 10, 1944, requested Dr. Bluemel to "re-examine claimant and set forth extent of permanent disability." In response to this request, Dr. Bluemel issued a report October 27, 1944, stating: "I would estimate the claimant's present industrial disability as equivalent to 5% as a working unit. If relief is experienced upon wearing glasses, this degree of disability should not prove permanent." Counsel for the employer requested permission to interrogate Dr. Bluemel on this report, which request was granted and a hearing for that purpose was held in Denver, December 13th. The interrogation, and answers thereto, are, in part, as follows: "Q. In your estimate of 5 per cent as a working unit, you were including the visual defect to a certain degree, were you not? A. I am, and I am assuming all these symptoms he complained of were due to the head injury occurring in November of 1942. * * * The visual disturbance is of a type which I think the claimant has always had, and I doubt that the injury aggravated it, and yet it is possible that the headaches might be relieved by glasses properly prescribed. * * * Q. You really can't tell whether that 5 per cent is due to his injury, or how

much is due to the preexisting visual defect that he has? A. That is correct."

The attorney general, in supporting the award, relies upon Dr. Bluemel's statement that claimant's "headache, dizziness, and other symptoms might well be due to the skull fracture," but he overlooks the qualifying language immediately following, "except the defect in the vision."

Dr. Bluemel testified further: "I don't think he is quite as good as he was before he was hurt, even though he was free from headaches, but the figure would be two and one-half per cent rather than five."

We see no distinction between this situation and that in the recent case of *Santerli v. Rocky Mountain Fuel Co.*, 113 Colo. 441, 158 P. (2d) 927, where the testimony consisted of the report of a single doctor who did not attempt to say what percentage of the disability was due to the accident. We held therein that, "Until there is competent testimony to show what per cent of the increased disability is due to the accident the commission cannot 'ascertain in terms of percentage the extent of general permanent disability which the accident has caused. * * *'."

Incidentally, the award here was premature. At the hearing on December 13, it was agreed that the employer would be given until January 3, 1945, in which to "elect to make offers for the correction of the claimant's vision." No election was made prior to the 19th day of December, 1944, when the referee entered the order allowing permanent disability equivalent to five per cent. The commission, in seeking to justify its action in approving this report, states in a letter written by its referee to the attorneys for the employer: "This award measured the disability of the claimant's eye without the aid of a correcting lens." This attempt to justify its action is of no avail, because it had not been established by competent evidence that the accident caused or aggravated the preexisting eye condition. The

beneficent rule, which we have adopted, and recently reaffirmed in *Great American Indemnity Co. v. Industrial Commission,* 114 Colo. 91, 162 P. (2d) 413, "that compensation for eye injuries shall be computed without reference to the use of corrective lenses," has no application where the defective vision considered by the commission was not caused by the accident. "Where the record shows that there had been a loss of vision before the injury, evidence of loss of vision, without a showing of the amount of vision at the time of the injury, is insufficient to support an award." 71 C.J. 1139.

In the case of *Superior Oil Co. v. Swimmer,* 156 Okla. 71, 9 P. (2d) 707, where claimant contended that his loss of vision was caused by a blow on the head, but where the medical testimony was to the contrary, the Supreme Court, in vacating the award, held: "The burden of proof was upon the claimant to establish that the loss of vision, if any, was caused by the accidental injury."

The judgment is reversed and the matter remanded to the district court with instructions to return the cause to the Industrial Commission for further proceedings and action consistent with the views expressed in this opinion.

MR. JUSTICE KNOUS, MR. JUSTICE HILLIARD and MR. JUSTICE STONE dissent.

MR. JUSTICE STONE dissenting.

I am unable to concur in the court's opinion in this case. Claimant had a defect in the vision which was correctable by glasses and was not caused by the injury. He had a skull fracture with resulting loss of smell which was caused by the injury and constituted two and one half percent disability. He had headaches and blurring of vision which Dr. Bluemel testified might well have been caused by the injury and constituted another two and one half percent disability. Dr. Bluemel further

testified that, " * * * if he were free from headaches to the time he was hurt, and had headaches after, then I should think the headache was caused by the head injury." Unfortunately claimant was not represented by an attorney at law and the essential facts do not appear with satisfactory clarity. Further, part of the evidence with relation to the origin of the headaches and blurring of vision was submitted at the first hearing before the referee at Steamboat Springs and that evidence for some unexplained reason is not included in the record certified here, but we believe that Dr. Bluemel's testimony above referred to, together with claimant's testimony attributing the headaches to the accident, is sufficient to make a prima facie case as to the headaches and blurring of vision and support the findings of the referee, the commission and the district court. The sufficiency of the evidence is the only matter here urged.

At the time of the hearing the referee of the commission gave respondent fifteen days within which to elect whether or not it would voluntarily furnish claimant with glasses in an effort to determine whether the headaches and blurring of vision might not have been caused by preexisting defect in vision and, notwithstanding such time given, the referee six days later (on December 19, 1944) entered the award of five percent total disability. Had respondent asked that the case be continued for the necessary time in which to procure glasses and demonstrate their effectiveness then, upon refusal of such continuance and proper showing here, that issue might be considered. However, respondent does not raise the issue here. Accordingly, the question as to premature entry of award for permanent disability is not here involved.

MR. JUSTICE KNOUS and MR. JUSTICE HILLIARD join in this dissenting opinion.