14999

POOLE v. SAXON MILLS ET AL.

(6 S. E. (2d), 761)

July, 1939.

*Messrs. Osborne, Butler & Moore,* for appellants,

*Messrs. Johnston & Williams,* for respondent,

January 1, 1940.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

The "Statement" in the Transcript of Record so concisely gives the history of this litigation, that we here reproduce it.

On September 26, 1938, while respondent was in the employ of Saxon Mills, one of the appellants herein, he sustained an injury by accident arising out of and in the course of his employment. Liberty Mutual Life Insurance Company was the insurance carrier of Saxon Mills under the Compensation Act. Respondent was furnished medical and hospital treatment and was paid compensation for the period for which he was disabled from carrying on his employment, to which employment he had returned prior to the filing of the claim out of which this appeal arises. Respondent filed claim against appellants with the South Carolina Industrial Commission for serious facial and head disfigurement. As a result of that application, a hearing was held at Spartanburg on March 9, 1939, Commissioner Isaac L. Hyatt presiding. Evidence was taken and thereafter, on March 20, 1939, Commissioner Hyatt filed his opinion and award by which he granted to respondent the sum of $1,250.00 for serious facial disfigurement under Section 31(t) of the Compensation Act, 39 St. at Large, page 1247. Appellants applied to the full Commission for a review of Commissioner Hyatt's opinion and award and in due time such review was had, and thereafter, on May 15, 1939, the majority of the Commission, through Commissioner Coleman C. Martin, filed an opinion and award sustaining Commissioner Hyatt. In due time an appeal was taken to the Court of Common Pleas for Spartanburg County from the award of the Industrial Commission upon grounds substantially the same as those presented as exceptions in this Court. Upon the record certified by the Industrial Commission to the Clerk of Court for Spartanburg County the appeal was

heard by and argued before Honorable T. S. Sease as resident Circuit Judge of the Seventh Circuit, and he took the same under advisement and later, before filing an order, notified respondent's attorneys to produce respondent before him so that he, as presiding Judge, might observe the respondent upon the ground that respondent's face was an exhibit before the hearing commissioner, that he, as presiding Judge, was entitled to have all the evidence before him in passing upon the appeal. Pursuant to this, respondent was produced and observed by him, over the objection of respondent's attorneys. Thereafter, on July 2, 1939, Judge Sease passed an order affirming the award of the Commission in respondent's favor. In due time, appellants served notice of their intention to appeal from Judge Sease's order and from the judgment entered or to be entered thereon, and judgment having been entered against appellants for the amount of the award, it presents this appeal.

The exceptions of appellants are as follows:

"1. That it was error to award compensation for serious head or facial disfigurement, the error being that the only reasonable inference to be drawn from the evidence is that the claimant has not sustained a serious facial or head disfigurement which is compensable under the Compensation Act.

"2. That it was error to award compensation for serious head and facial disfigurement, the error being that there is no other reasonable inference to be drawn from the evidence than that the disfigurement, such as may exist, does not render the claimant so grotesque and unsightly as to make him obnoxious and repulsive to others.

"3. That is was error to award compensation for serious head and facial disfigurement, the error being that such disfigurement, if any, as the claimant has is not, as a matter of law, of a serious character required by the Act to justify the payment of an award for compensation therefor.

"4. That it was error to award $1,250.00 for such scars or alleged disfigurement as claimant has, the error being that the amount awarded is arbitrary and capricious and without substantial evidence to support an award in such a substantial amount, and same should therefore be reversed."

Section 31(t) of the Workmen's Compensation Act provides *inter alia*: "In case of serious facial or head disfigurement, the Industrial Commission shall award proper and equitable compensation not to exceed $2,500.00."

The testimony of Dr. W. W. Boyd was to the effect that respondent received a wound across his forehead about four and one-half inches long, with a scar in the skin and a depressed fracture of the bone beneath it. In treating this wound, an opening was made about three inches long above his right eye, one inch above his right eye into the scalp, and the bone elevated and the wound closed.

"Mr. Butler: Has his appearance reached the ultimate condition? Will there be any further change in the appearance? A. The only further change, the scar will be a little less noticeable after a little further time.

"Q. It will tend to improve somewhat? A. Yes.

"Q. Now, doctor, will you just, as I understand, he has been discharged from the injury? A. Yes.

"Q. And all that remains is a matter of such scars as you will describe, and as appear, is that correct? A. Yes. He has been back to work.

"Q. Will you just describe the nature and extent of such scars as he may have on his forehead? Are there any other scars than those on his forehead? A. No.

"Q. Go ahead and describe them with reference to length, diameter, etc. A. Well, this (referring to scar on forehead) is approximately three to three and a half inches scar from the right eye up to the hair; it is well healed and just a lineal scar, and according to this, there is about five marks that were left across the forehead, by the instrument by which he was injured.

"Q. What is the extent of those other marks that you refer to? A. They were partly through the skin.

"Q. What is the extent of them now? From the standpoint of appearance? A. Well, they are small scars.

"Q. About how long are they? A. About half an inch long.

"Q. About how long is that part of the lineal scar to which you first referred before it gets into the hair where it is covered by the hair? A. About two and a half inches.

"Q. Doctor, is there .anything about the nature of those marks on his forehead which would affect the type of work he was doing in the cotton mill? A. The mark on his forehead? No.

"Q. Is there anything about his condition, doctor, which would render him unsightly and grotesque and repulsive and obnoxious to his fellow man? A. No.

"Cross-Examination by Mr. Johnston:

"Q. Doctor, when you run your hand across there (forehead of claimant. you can feel those indentations, can you not? A. Yes.

"Q. How many are there, run your hands across and count them? A. Four.

"Q. Now, where this gash runs from just above the right eye to back in the hair, is that skull at all indented in there? A. Well, there is some roughness on the skull. It is not indented, there is some roughness.

"Q. You would not like to have that in your head? A. Well—

"Mr. Hyatt: The Commissioner can answer that question.

"Re-direct Examination by Mr. Butler:

"Q. Doctor, there is no malformation of the skull from the appearance now, is there? A. No.

"Q. And these roughened areas that you referred to, it requires feeling with the fingers in order to detect those, does it not? A. Well, you can see the mark.

"Q. But Mr. Johnston referred to feeling the roughened condition? A. Yes, you can feel those where the marks were in between.

"Q. But, insofar as the roughened condition of the skull is concerned, that is not apparent, that is just the condition of the skin resulting from the short indentations? A. Yes, that is right.

"Q. Now, doctor, is there any scar tissue there? A. Yes, the scar tissue is in each one of these wounds. The skin has been thinned down to scar tissue where it was broken, and where the incision was made.

"Q. Is that adherent, or not? A. No.

"Q. About how wide is that longer mark on his forehead? It is a very small fracture? A. Yes.

"Mr. Hyatt: Doctor, those scars and that scar tissue there, that line, it. is very noticeable, is it not, you can notice it even from the distance that I am to you? Would you mind stepping that far and look? (Dr. Boyd steps to where Commissioner is.) A. Yes, even this far it is noticeable.

"Mr. Butler: How far would you say you are  A. Ten or twelve feet.

"Mr. Hyatt: Go back a little so you will know you are twelve feet. Is it about the same from there? A. Yes.

"Q. That is fifteen feet? A. Yes.

"Mr. Butler: How about the smaller indentations from that distance? A. I don't know how good my eyesight is; I cannot make those out from here.

"Mr. Hyatt: Come up until you can see those dents. A. I can tell them from about eight feet.

"Mr: Hyatt (feeling over Mr. Poole's forehead): There seems to be a flatness there in the head; it seems there is a flatness on each side of that long scar, even from here? A. Yes, there is some thinness in here.

"Q. That is because of that dent in there? A. The thinness, yes, the thinness of the tissue where it was injured.

"Mr. Williams: That is caused by the injury? A. Yes.

"Mr. Butler: Is that particularly apparent or noticeable without feeling it? A. Yes, you can see it a little flattened on both sides, the tissue was pulled back when it grows back.

"Q. That results from the skin itself, not from the malformation of the forehead? A. Yes, it is thinnest in the scalp.

"Mr. Hyatt: That was caused from the injury? A. Yes.

"Mr. Butler: Will that change any? A. No, it will not fill in."

Respondent testified that he was back at work, not doing the same work as he was prior to the injury, but was receiving the same pay; that he had no facial disfigurement or scar before this injury; that people quite often stared at his scars; that the wearing of a hat tended to cover up the marks on his forehead.

On the foregoing testimony and observation of respondent, the hearing commissioner found as a fact that respondent had sustained a serious facial disfigurement, and awarded him compensation in a lump sum of Twelve Hundred and Fifty ($1,250.00) Dollars. The full commission affirmed such finding of fact, and the Circuit Judge affirmed the action of the hearing commissioner and the full Commission.

Appellants and respondent have cited and quoted from the case of *Murdaugh v. Robert Lee Construction Co.,* 185 S. C., 497, 194 S. E., 447, but that case is of no assistance to us in deciding the issues here involved, except from the standpoint of research, since the alleged disfigurement, for which a recovery was sought in the *Murdaugh case,* did not involve facial or head disfigurement.

It will first be noted that where an "employee" suffers a serious facial or head disfigurement, the statute is mandatory as to the Commission awarding compensation in some amount. Therefore, the disposition of Exceptions 1, 2 and 3 will depend upon the intendment of the Legislature in the use of the words "serious" and

"disfigurement" in the portion of Section 31(t), hereinabove quoted.

The construction given a statute by those charged with the duty of executing it is always entitled to the most respectful consideration, and ought not to be overruled without cogent reasons. *Hadden v. South Carolina Tax Commission*, 183 S. C., 38, 190 S. E., 249; *Read Phosphate Co. v. South Carolina Tax Commission*, 169 S. C., 314, 168 S. E., 722; *City of Spartanburg v. Leonard*, 180 S. C., 491, 186 S. E., 395.

It is stated in Endlich on the Interpretation of Statutes, at page 4: "The first and most elementary rule of construction is, that it is to be assumed that the words and phrases are used in their technical meaning if they have acquired one, and in their popular meaning if they have not, and that the phrases and sentences are to be construed according to the rules of grammar; and from this presumption it is not allowable to depart, unless adequate grounds are found, either in the context or in the consequences which would result from the literal interpretation, for concluding that that interpretation does not give the real intention of the Legislature."

In *Superior Min. Co. v. Industrial Commission*, 309 Ill., 339, 141 N. E., 165, 166, the word "disfigurement" is defined as "that which impairs or injures the beauty, symmetry, or appearance of a person or thing; that which renders unsightly, misshapen, or imperfect, or deforms in some manner." In *Dickson v. United States Sheet & Window Glass Co.*, 3 La. App., 83, Webster's definition of "a change of external form to the worse" is adopted. Black's Legal Dictionary, 3d Ed., page 589, defines "disfigurement" in the identical language used in *Superior Min. Co. v. Industrial Commission, supra*, and after citing and quoting from that authority in the prevailing opinion in *Murdaugh v. Robert Lee Construction Co., supra* (185 S. C., 497, 194 S. E., 452), Mr. Justice Bonham stated: "It

will be conceded, I think, that a deformity may render one grotesque, unsightly, obnoxious, even repulsive to others."

While the definition of the word "disfigurement" would no doubt permit of a lengthy dissertation, and of citations from cases in many jurisdictions, we are content to accept the definition as given in *Superior Min. Co. v. Industrial Commission, supra,* Black's Legal Dictionary, 3d Ed., and Webster's definition as quoted in *Dickson v. United States Sheet & Window Glass Co., supra.*

That to have a scar and depression extending from one's eye about three inches long into the scalp, and noticeable, as, we would say, such a facial and head disfigurement as was in the minds of the Legislature, and a "serious" one when it is visible at a distance of several feet, and attracts the attention of others. We can gather some idea of the intention of the Legislature in the use of the word "serious" or the phrase "serious facial or head disfigurement" in the wide latitude given in the awarding of compensation on account thereof, there being no minimum amount fixed, but a maximum of $2,500.00. If the facial and head disfigurement must, in fact, be so serious that it not only is apparent and noticeable upon sight, must within itself attract attention, but must also handicap one in the procurement of employment and affect his social activities, we venture to think that a minimum amount would have been provided in the Act. We conclude that the word "serious" was used in the sense that the disfigurement should be much more than slight, and partaking of permanency.

There being competent evidence to sustain the findings of fact by the Industrial Commission, the Circuit Judge properly affirmed its finding and holding thereabout. *Rudd v. Fairforest Finishing Plant,* 189 S. C., 188, 191, 192, 200 S. E., 727, and cases therein cited.

This Court, of course, has the power to set aside a verdict of a jury which is so excessive as to warrant the conclusion that the trial Judge abused his discre-

tion in refusing to grant relief against it. In making an award for compensation under Section 31(t), the Commission acted in the capacity of a jury, and the Circuit Judge who heard the appeal, in the capacity of trial Judge. Therefore, the rule of law governing the granting of new trials on the ground that the verdict is excessive is applicable.

In *Huggins v. Atlantic Coast Line R. Co.*, 96 S. C., 267, 278, 79 S. E., 406, 410, this Court stated: "* * * if a verdict which is only moderately excessive is allowed to stand, the trial judge is alone responsible; for he alone is vested with power and discretion to set it aside, absolutely or conditionally. This court has no power to do so, unless, as was said in *Bing v. Atlantic Coast Line R. Co.*, 86 S. C. [528], 530, 68 S. E., 645, it is so excessive as to warrant the conclusion that the circuit judge abused his discretion in refusing to grant relief against it. In that event, this court would have the power to set it aside, because a verdict which is so excessive as to warrant the inference that it is the result of caprice, passion, prejudice, or other considerations not found in the evidence, is without authority of law, and it would be manifest error of law to refuse to vacate it. * * *"

The "trial" Judge in his order affirming the Industrial Commission, had this to say: "I have listened carefully to the argument of counsel for both appellant and respondent, and have ordered the claimant to appear before me in order that I might personally see his injury; this was done over the legal objections of the claimant's counsel; and I have come to the conclusion that the opinion and award of the South Carolina Industrial Commission and Hearing Commissioner Isaac L. Hyatt in this case should be affirmed."

It would therefore appear that the Circuit Judge gave every consideration to the position of appellant that the award was excessive, and only after personally viewing respondent's disfigurement did he affirm the findings of the Commission. Even had the trial Judge reached

the conclusion that his finding of fact (amount of the award) would have been different from that of the Commission, yet he would not, as a matter of law, have been required to grant a new trial. *Entzminger v. Seaboard Air Line Railway,* 79 S. C., 151, 60 S. E., 441; *Beaudrot v. Southern R. Co.,* 69 S. C., 160, 48 S. E., 106.

We are unable to say that the trial Judge committed an "abuse of discretion," which is a "legal term to indicate that the appellate court is simply to the opinion that there was commission of an error of law in the circumstances."

Appellants' counsel served a notice upon the attorneys for respondent to produce respondent before this Court at the time this appeal was orally argued, upon the ground that he was an exhibit in the cause and a part of the evidence to be considered by this Court. Respondent's attorneys did not produce him, but expressed their willingness so to do.

We do not find it necessary to observe the respondent in order to reach a decision in this case, and will therefore not order that he be brought before us.

Judgment affirmed.

Messrs. Justices Carter, Bonham and Fishburne concur.

Mr. Chief Justice Stabler did not participate in the decision of this case.