No. 19,566.

BARBARA ARKIN, ETC. *v.* INDUSTRIAL COMMISSION OF COLORADO, ET AL.

(358 P. [2d] 879)

Decided February 20, 1961.

464

Mr. Donald M. Shere, Mr. Harry L. Arkin, for plaintiff in error.

Mr. Harold Clark Thompson, Mr. Louis Schiff, Mr. Alious Rockett, Mr. Fred B. Dudley, for defendants in error State Compensation Insurance Fund and Jewish Community Centers of Denver.

Mr. Duke W. Dunbar, Attorney General, Mr. Frank E. Hickey, Deputy, Mr. Peter L. Dye, Assistant, for defendant in error Industrial Commission of Colorado.

*In Department.*

Opinion by Mr. Justice Frantz.

Without detailing the vicissitudes of this claim for workmen's compensation as it moved from referee to commission to the district court and back to the commission, and thereafter again to the district court, it is sufficient to note that the prelude to this writ of error was a judgment of the court upholding the commission's award of $500.00 to Barbara Arkin, a sixteen-year-old girl. The award was rooted in C.R.S. '53, 81-12-5, which provides for benefits for "dental treatment and services as may reasonably be necessary to repair and alleviate the effects of injury [to teeth], not to exceed five hundred dollars in value."

Dissatisfaction with the commission's award as sustained by the trial court stems from the adverse disposition made of certain elements of Arkin's claim. In order better to understand and resolve her criticism of the award it might be well to cast the problems thereby raised in the form of questions, and proceed to answer them.

Four questions are thus presented for determination: (1) Is Arkin entitled to the cost of prosthesis in addition to the $500.00 awarded her for repair and alleviation of the effects of her injury? (2) Is Arkin entitled to an award for permanent partial disability? (3) Is Arkin entitled to an award for disfigurement? (4) Is Arkin entitled to have her expert witnesses paid fees, as part of the award, for testifying before the referee?

It is admitted that Arkin sustained injuries arising out of and in the course of her employment. It is undisputed that her three upper front teeth and one lower front tooth were seriously injured, and that as a result thereof the three upper teeth had to be removed and the lower treated and capped. At the time of the hearing there was some dubiety expressed concerning eventually saving the lower tooth.

At the first hearing Arkin removed a temporary

bridge to show the cavity resulting from the removal of her upper front teeth. A photograph appears in the record which makes a like revelation. A dentist and a doctor specializing in surgery of the jaw stated that Arkin sustained permanent partial disability, but confessed that they were unable to estimate the extent thereof.

At the second hearing Dr. Benkelman, the dentist who furnished the prosthetic device for Arkin, gave it as *his* opinion, after consultation with other dentists and resort to the Denver Medical Library to review state compensation cases, that she had sustained permanent partial disability of 3%. Questions and answers preceding this opinion are in part the following:

"Q. * * * taking into account the loss of these teeth and the bone as you described, is there a permanent partial disability of Barbara Arkin, the claimant? A. It is my opinion there is, yes, very definitely. Q. Is this a permanent partial disability of her total physical system? A. Yes. Q. Considered as a whole? A. In my opinion it is, yes."

A few weeks before testifying as related, this dentist had written a letter to the father of the claimant advising him that in *his* opinion Arkin had suffered a permanent partial disability of about 3% of the whole. He also wrote that in "arriving at my opinion of 3%, I consulted with several other men in the Group of Dentists with whom I'm associated, and it was the consensus of opinion that 3% would be the fairest figure." In questioning the doctor, the referee brought out much the same information; the doctor testified that it was *his* opinion, but that the consultation with other dentists "played a part" — "it helped me arrive at a figure."

The order of the commission at the conclusion of the second hearing reviewed the testimony of Dr. Benkelman. "This witness testified that he felt the claimant had a facial disfigurement in that her upper lip protruded more than he likes since a fixed denture had been

inserted as a substitute for teeth lost. * * * He further stated that $307.50 was the cost of the denture. * * * This witness indicated he felt claimant had a 3% permanent partial disability. *The witness did not at any time indicate to what this 3% disability figure related.* A written report, designated as claimant's Exhibit B, was received in evidence. This document indicated the witness was of the opinion that claimant had suffered permanent partial disability of about 3% of the 'whole.' This statement was not elaborated upon as to whether he meant her teeth, her jaws, or her whole body. The witness indicated this was the first time he had attempted to evaluate permanent partial disability of a nature allegedly sustained by claimant. As a basis for his opinion, he consulted with other persons who were not present at the hearing and who were not subject to cross-examination at any time. Exhibit B indicates that his expressions pertaining to permanent partial disability were actually a consensus of opinions of himself and other persons not subjected to cross-examination."

Concerning disfigurement the commission observed that the "basic philosophy of the Workmen's Compensation Act is to compensate an individual who has been injured for loss of earning ability. * * * Thus, the basic elements of disability, permanent or temporary, are impairment of earning capacity, together with that ingredient devoted to a medical or physical sense evidenced by loss of some member of the body, or loss of the use of said member. This pertains even to statutory provisions for payment of compensation in cases of facial disfigurement."

The commission also noted that "there is no serious permanent disfigurement about head or face. It is further noted that a slight protrusion of the claimant's upper lip, if such in fact does exist, would in no wise interfere with her ability to earn a living or to secure employment. * * * She has suffered no loss of any member of her body * * *, and, in fact, other than loss of her

two [sic] teeth, she continues to be capable of earning her living at this time." It then observed that the "statutory maximum payment for dental treatment and services necessary to repair and alleviate effects of her dental injury" had been allowed. It determined that such allowance would be the extent of the award.

Several sections of the Workmen's Compensation Act must be construed individually and in their relation to each other in order properly to decide the issues of this writ of error. We quote them, supplying the emphasis:

"Every employer * * * shall furnish such medical, surgical, nursing and hospital treatment, medical, hospital and surgical supplies, crutches, and apparatus as may reasonably be needed at the time of the injury and thereafter during the disability, but not exceeding * * * one thousand five hundred dollars in value to cure and relieve from the effects of the injury. In *all cases* where the accident results in the *loss of a member, or part of the employee's body* * * * the employer *shall furnish in addition* to the medical benefits hereinabove provided for, such artificial member, glasses, hearing aid, brace, and *other prosthetic device* as may be reasonably required *to replace* or improve the function of *each member or part of the body so affected.* * * * " C.R.S. '53, Cum. Supp. '57, 81-10-1.

"When an accident causes *injury to the teeth* of an employee, *in addition to receiving compensation for disability* and the medical, surgical and hospital services provided herein, he shall be entitled with the prior approval and consent of the commission to receive such dental treatment and services *as may reasonably be necessary to repair and alleviate the effects of the injury,* not to exceed five hundred dollars in value." C.R.S. '53, 81-12-5.

"If any employee is *seriously permanently disfigured about the head or face,* the commission, *in addition to all other compensation benefits* provided in this article, may allow such sum for compensation on account there-

of·as it may deem just, not exceeding one thousand dollars." C.R.S. '53, Cum. Supp. '57, 81-12-6.

"When an accident causes injury resulting in permanent partial disability *except the sustaining of any one of the injuries specifically covered by sections 81-12-4 to 81-12-7 inclusive,* the injured employee shall be deemed to be permanently disabled from the time he is so declared by the commission and from said time shall be entitled to compensation for *permanent partial disability in addition to any compensation theretofore allowed. * * * "* C.R.S. '53, Cum. Supp. '57, 81-12-9.

1. Is Arkin entitled to the cost of prosthesis in addition to the $500.00 awarded her for repair and alleviation of the effects of her injury? To hold that she was not so entitled would be, in our opinion, a strained and unnatural construction of the Compensation Act.

The pertinent language of C.R.S. '53, Cum. Supp. '57, 81-10-1, is: "In *all* cases where the accident results in the *loss of a member,* or *part of the employee's body,* * * * the employer *shall furnish* in addition to the medical benefits * * * such * * * *prosthetic device* as may be reasonably *required to replace* * * * each member or part of the body so affected * * * "* (Emphasis supplied.) Whether we construe teeth as members of the body within the language of this section (*Mabee v. Anthony,* 155 Okla. 35, 8 P. (2d) 22, 80 A.L.R. 968; *Keith v. State,* 89 Tex. Cr. 264, 232 S.W. 321, 16 A.L.R. 949), a construction rejected by the commission when it held that Arkin had "suffered no loss of any member of her body," or as parts of the body under the more generic language of the Act, the application of the statute is the same.

The mandate of the statute is clear that in "all cases" a prosthetic device be furnished as may be reasonably required as a replacement where an employee has suffered a loss of a member or part of his body. In the present case the prosthetic device was a denture which cost $307.50. By the terms of the statute Arkin was to be furnished this artificial device "in addition to

the medical benefits" to which she was entitled under the Act. That there were no medical benefits does not affect her right under the Act to prosthesis where warranted, nor does it affect the right to have dental treatment and services furnished.

2. Is Arkin entitled to an award for permanent partial disability? To arrive at a proper answer is attended with some difficulty. If it were not for prior interpretation of the statute, and this were a matter of first impression, the question would be a veritable Gordian Knot.

C.R.S. '53, 81-12-5, directs that "When an accident causes injury to the teeth of an employee, *in addition to receiving compensation for disability*," he shall receive dental treatment and services "as may reasonably be necessary to repair and alleviate the effects of the injury * * * " This section, if it means what it appears to say, would permit recovery for disability, whether partial or total, temporary or permanent.

But C.R.S. '53, Cum. Supp. '57, 81-12-9, provides that "Where an accident causes injury resulting in *permanent partial disability except* the sustaining of any one of the injuries *specifically* covered by sections 81-12-4 to 81-12-7 inclusive, the injured employee shall be deemed to be permanently disabled from the time he is so declared by the commission and from said time shall be entitled to compensation for permanent partial disability *in addition to any compensation theretofore allowed.* * * *" (Emphasis supplied.) It will be noted that C.R.S. '53, 81-12-5, is one of the exceptions. It thus would appear that for injury to teeth additional compensation for disability is bestowed by the Legislature by its right hand and snatched away by its left hand.

The method of determining disability provided by C.R.S. '53, Cum. Supp. '57, 81-12-9, cannot be used when the injury is one appearing in sections 81-12-4 to 81-12-7 inclusive, "because by its specific terms such injuries are excluded." *Cresson Cons. Gold M. & M. Co. v. In-*

*dustrial Comm.,* 90 Colo. 353, 9 P. (2d) 295. See *Leyden Lignite Co. v. Buddy,* 98 Colo. 452, 56 P. (2d) 52.

■ If we give the obvious meaning to C.R.S. '53, 81-12-5, compensation for disability is a proper element and in a proper case its extent should be determined by the commission. Bringing it to bear on this case, we would direct a remand to the commission for a re-evaluation of the testimony of Dr. Benkelman. For the commission found that Dr. Benkelman had not related the 3 per cent disability to anything, whether to teeth, jaws or the whole body, whereas the testimony was definitely that it pertained to her "total physical system." Moreover, his testimony was to the effect that it was his opinion, although it represented the consensus of opinion of a number of dentists with whom he had consulted. That his opinion was the consensus of opinion of a number of persons does not derogate from its efficacy, if the witness in final analysis entertains it as his own.

If we follow *Cresson,* supra, we would have to affirm the award regardless of the reason for its entry. The fact that C.R.S. '53, Cum. Supp. '57, 81-12-9, is an amendment of the previous section relating to permanent partial disability, and that the General Assembly in so amending retained the exceptions already interpreted in connection with the excluded sections in *Cresson,* supra, would require a holding that Arkin could have benefits only under C.R.S. '53, 81-12-5, providing certain benefits for injury to teeth. This last view we must and do adopt.

3. Is Arkin entitled to an award for disfigurement? The commission based its denial of an award for disfigurement on a philosophical and factual basis. It declared that the philosophy of workmen's compensation is that a claimant's earning capacity must be adversely affected to warrant the granting of benefits under the Act; hence, Arkin was without recourse under the law. Factually, it found no disfigurement.

It is obvious from a reading of the relevant section that the earning capacity principle is of no great significance where disfigurement results from an injury. Else why the limitation of compensation to an employee "seriously disfigured about the face or head" to a sum of not exceeding $1,000.00? Possessors of positions in which appearance is an important factor, such as models, actors, TV performers, receptionists, and so forth, would have difficulty finding the award permitted under this section to have any relationship to the matter of compensation for impairment of earning capacity. The very meagerness of the ultimate award allowable for head or facial disfigurement compels the construction that the right to compensation for serious head or facial disfigurement is not dependent on diminution of earning capacity. See *Great American Ind. Co. v. Industrial Comm.,* 114 Colo. 91, 162 P. (2d) 413.

When nature is powerless to restore three upper front teeth lost in an industrial accident, may the person sustaining the loss be entitled to an award for facial disfigurement? A disfigurement is an observable impairment of the natural appearance of a person. *Bethlehem-Sparrows Point Shipyard v. Damasiewicz,* 187 Md. 474, 50 A. (2d) 799; *Branham v. Denny Roll & Panel Co.,* 223 N.C. 233, 25 S.E. (2d) 865; *Poole v. Saxon Mills,* 192 S.C. 339, 6 S.E. (2d) 761.

"[T]o knock out two teeth would certainly be disfigurement to the head *as nature made it,* and *as nature made the front,* which we call the face." (Emphasis supplied.) *Mabee v. Anthony,* supra. That the condition prior to disfigurement cannot be restored (as by plastic surgery), but can be *concealed* by artificial means (in this case, a denture) does not detract from the real condition: that she has an unsightly cavity resulting from lost teeth.

A person rendered bald by burns suffered in an industrial fire is disfigured, and the fact that he can conceal the disfigurement by a prosthetic device, a wig, does

not alter his actual condition. A person who suffers the loss of an eye is and remains disfigured notwithstanding he attempts to conceal his condition by the use of an artificial eye. Concealment would as well be accomplished by refraining from meeting the public, but such concealment is not rectification of the condition of Arkin, nor of those involved in the illustrations just presented.

█ The loss of her three upper front teeth is a disfigurement; since nature cannot replace them, Arkin's natural appearance has been seriously impaired, and a resort to an artificial device to mask the blemish does not alter a whit the fact that she sustained a mutilation of her mouth. For such disfigurement the Act provides compensation.

█ 4. Is Arkin entitled to have her expert witnesses paid fees, as part of the award, for testifying? With an exception (C.R.S. '53, 81-14-20) not here applicable, the Workmen's Compensation Act contains no provision empowering the commission to assess costs against either party in proceedings before it. Not having such power, the answer to the question must be in the negative. *Maryland Casualty Co. v. Industrial Comm.,* 116 Colo. 58, 178 P. (2d) 426.

The judgment is reversed and the cause remanded to the trial court with directions to recommit the claim to the Industrial Commission for a hearing thereof consonant with the views herein expressed.

Mr. Justice Moore and Mr. Justice Doyle concur.