**Ruben GONZALES and the Industrial Claim Appeals Office of the State of Colorado, Petitioners,**

v.

**ADVANCED COMPONENT SYSTEMS and Colorado Compensation Insurance Authority, Respondents.**

**No. 96SC336.**

Supreme Court of Colorado, En Banc.

Dec. 15, 1997.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, Pepe J. Mendez & Associates, P.C., Pepe J. Mendez, Denver, for Petitioner Ruben Gonzales.

No Appearance by or on Behalf of Petitioner The Industrial Claim Appeals Office of the State of Colorado.

No Appearance by or on Behalf of Respondent Advanced Component Systems.

Colorado Compensation Insurance Authority, Curt Kriksciun, Denver, for Respondent Colorado Compensation Insurance Authority.

Justice KOURLIS delivered the Opinion of the Court.

We granted certiorari in this case [1] to review *Advanced Component Systems v. Gonzales*, 935 P.2d 24 (Colo.App.1996), in which the court of appeals held that an ocular disfigurement is not a medical impairment and can only be compensated as a cosmetic disfigurement under section 8–42–108, 3B C.R.S. (1996 Supp.). We conclude that a facial cosmetic deformity may be treated as impeding an individual's function and be compensable as a medical impairment under section 8–42–107(8) rather than only as a cosmetic disfigurement under section 8–42–108. Therefore, we reverse the court of appeals.

---

**1.** Our order granting certiorari set forth the following two issues: (1) whether a cosmetic disfigurement, which does not interfere with a physical function, is a medical impairment under section 8–42–107(8), 3B C.R.S. (1996 Supp.); and (2) whether cosmetic disfigurement is limited to an award exclusively under section 8–42–108, 3B C.R.S. (1996 Supp.).

### I.

Petitioner Ruben Gonzales sustained an injury to his right eye while working as a roof and floor truss assembler for Advanced Component Systems in Louisville, Colorado. On December 16, 1992, Gonzales was removing a steel connector plate from a truss when a piece of the plate flew up and lodged in his right eye. An ophthalmologist removed the piece of steel from Gonzales' eye and repaired lacerations of his cornea, retina and iris. Gonzales returned to work approximately three months after the accident.

Gonzales' authorized treating physician, Dr. Lawrence A. Winograd, M.D., determined that, as a result of the work-related injury, Gonzales sustained an 81% impairment of the eye, a scheduled injury under section 8–42–107(2), 3B C.R.S. (1996 Supp.). Neither party contests this aspect of the rating. Winograd converted the 81% impairment of the eye into a 55% impairment of the whole person.

Winograd also determined that because Gonzales had suffered a cosmetic deformity of the eye, he was entitled to an additional 5% whole person impairment [2] based on the revised third edition of the American Medical Association Guides to the Evaluation of Permanent Impairment (the AMA Guides).[3] Section 8.6 of the AMA Guides (3d ed. rev. 1990) permits up to an additional 10% whole person impairment rating for cosmetic deformities to the eye "that do not otherwise alter ocular function." Winograd therefore assessed an additional 5% impairment of the whole person for Gonzales' cosmetic deformity of the eye. Considering jointly the 55% whole person impairment for loss of vision and the 5% whole person impairment for cosmetic deformity, Winograd determined that Gonzales had sustained a 60% whole person impairment.

The respondents, Advanced Component Systems and the Colorado Compensation Insurance Authority (CCIA) contested the cosmetic deformity aspect of the rating, and the matter proceeded to hearing before an Administrative Law Judge (ALJ).[4]

The ALJ ruled that Gonzales was entitled to only a scheduled injury under section 8–42–107(2)(gg) for 81% loss of use of his eye. The ALJ did not award any benefits for the ocular cosmetic deformity.[5]

Gonzales appealed the ALJ's ruling to the Industrial Claim Appeals Office (ICAP), which ruled that disfigurement involving the face constitutes a separate category of medical impairment. See AMA Guides § 9.2 (3d ed. rev.1990). Because the doctor based his rating on the AMA Guides as required by subsections 8–42–101(3.5) and (3.7), the ICAP held that Gonzales was entitled to benefits for his cosmetic deformity. The ICAP distinguished an award for cosmetic deformity of the eye as provided in the AMA Guides from awards for disfigurement under section 8–42–108 noting that the "AMA Guides indicate that disfigurement involving the face is so disruptive of an individual's function, par-

2. Section 8.6 of the AMA Guides (3d ed.) provides: "Up to an additional 10% impairment may be combined with the impairment of the whole person caused by the visual system for such conditions as permanent deformities of the orbit, scars, and other cosmetic deformities that do not otherwise alter ocular function."

3. The General Assembly mandates the use of the revised *third* edition of the American Medical Association Guides to the Evaluation of Permanent Impairment, in effect as of July 1991. See §§ 8–42–101(3.5), (3.7); 8–42–107(b.5), (c), 3 C.R.S. (1997); *see also* Permanent Impairment Rating Guidelines Rule XIX(A),(C), 7 C.C.R. 1101–3 (1996). However, a *fourth* edition of the AMA Guides was published in June 1993. While the record does not indicate which edition of the AMA Guides the authorized treating physician used in evaluating and rating Gonzales' impair-

ment, the court of appeals cites the fourth edition. We note that the variations between the two editions do not alter our analysis in this case. We cite to the third edition except in discussing the court of appeals' analysis.

4. We note at the outset that CCIA failed to obtain an independent medical examination contesting the accuracy, reliability and credibility of Winograd's rating as required by section 8–42–107(8)(c). Because the issue presents a question of law, we proceed to resolve it without reference to CCIA's failure.

5. Although the ALJ specifically observed Gonzales at the hearing to evaluate the claimed cosmetic deformity, his order stated: "Any cosmetic deformity of Claimant's right eye as observed by the undersigned [ALJ] was not considered as evidence."

ticularly in the area of communication, that it constitutes a separate category of medical impairment." *Gonzales v. Advanced Component Systems,* Industrial Claims Appeals Office, W.C. No. 4–157–346, at 3 (Apr. 26, 1995). The AMA Guides instruct that "disfigurement of the eye impairs a claimant's physical function in a manner not associated with other types of disfigurement such as scarring of the arms or legs." *Gonzales,* W.C. No. 4–157–346 at 3. The ICAP then ruled that section 8–42–108 does not preclude an award of permanent partial disability benefits under section 8–42–107(8)(c) for cosmetic deformity of the eye. Finally, it concluded that because Gonzales was entitled to a whole person rating for cosmetic deformity, he was also entitled to a whole person rating for his visual impairment for a joint whole person rating of 60%.

CCIA appealed the ICAP's decision and the court of appeals reversed. The court ruled that a "cosmetic disfigurement" that does not impede any physical function may, as a matter of law, only be compensated under section 8–42–108, the disfigurement statute. *See Gonzales,* 935 P.2d at 27.

## II.

We are faced with an apparent discrepancy between the applicable statutes. On the one hand, section 8–42–101(3.7), 3B C.R.S. (1996 Supp.), requires that all physical impairment ratings be based on the AMA Guides. Section 8–42–107(8)(c) provides that "the authorized treating physician shall determine a medical impairment rating as a percentage of the whole person based on the revised third edition of the [AMA Guides]." § 8–42–107(8)(c), 3B C.R.S. (1996 Supp.). This court has ruled that section 8–42–107(8)(c) "mandates that the authorized treating physician base his or her decision on the provisions of the AMA Guides." *Askew v. Industrial Claim Appeals Office,* 927 P.2d 1333, 1337 (Colo.1996). The AMA Guides direct that facial deformities are presumed to impact on an individual's social and vocational functioning and thus should be rated.

On the other hand, section 8–42–108 provides:

If any employee is seriously, permanently disfigured about the head, face, or parts of the body normally exposed to public view, the director, in addition to all other compensation benefits provided in this article, may allow such sum for compensation on account thereof as the director may deem just, not to exceed two thousand dollars. § 8–42–108, 3B C.R.S. (1996 Supp.). CCIA argues that the remedy created in section 8–42–108 is exclusive and preempts any other award for cosmetic disfigurement, whether contemplated by the AMA Guides or not.

In this case, the authorized treating physician assessed Gonzales' injury under the AMA Guides and labeled the disfigurement to Gonzales' eye a cosmetic deformity. Section 8.6 of the AMA Guides provides that an impairment rating may be assessed for "cosmetic deformities [of the eye] that *do not otherwise alter ocular function.*" AMA Guides § 8.6 (3d ed. rev.1990)(emphasis added). Hence, the 5% impairment rating assigned by the treating physician was based on the physician's conclusion that the deformity caused a functional impairment associated with a facial disfigurement. *See* AMA Guides § 9.2 (3d ed. rev.1990). Addressing the "functional" role of the face, the AMA Guides provide:

> The face has a unique role in communication. No other part of the body serves as specific a *function* for personal identity and for expression of thought and emotion.... A degree of normalcy is expected for effective verbal and non-verbal communication.... The face is such a prominent feature of a person that it plays a critical role in his physical, psychological and emotional make up. Facial disfigurement can affect all these components and can result in social and vocational handicap.

AMA Guides § 9.2 (3d ed. rev.1990)(emphasis added). Under the AMA Guides, a facial deformity is deemed to be a functional, not just a cosmetic, impairment. Section 9.2 also states that "[i]mpairment in this section is limited to abnormality in structural integrity only. (For loss of function, refer to [other sections])." This language simply draws the distinction between the loss of physical, or

ocular, function, and the loss of function resulting from abnormality in structural integrity.

 Workers' compensation law requires an evaluation of "permanent medical impairment" to determine the amount of benefits to which a claimant is entitled. *See* § 8–42–107(1), 3 C.R.S. (1997). Subsections 8–42–101(3.5) and (3.7) respectively provide that "medical impairment rating guidelines for impairment ratings as a percent of the whole person or affected body part" and "all physical impairment ratings used under articles 40 to 47 of this title" shall be based on the AMA Guides. § 8–42–101(3.5), (3.7), 3 C.R.S. (1997). The AMA Guides define "impairment" as "an alteration of an individual's health status that is assessed by medical means." AMA Guides § 1.1 (3d ed. rev. 1990). Hence, the AMA Guides contemplate that a disfigurement to the eye can have more than just cosmetic implications, and when such an injury is determined to be functional it should be assessed as part of the whole person impairment.

The court of appeals concluded that: (1) the AMA Guides apply only when an employee suffers a medical impairment, and (2) as a matter of law a cosmetic disfigurement is not a medical impairment. Therefore, that court reversed the ICAP holding.

We agree with the ICAP. The AMA Guides specify that a deformity to the face can indeed be classified as a functional medical impairment and can be rated accordingly.

Relying on *Boice v. Industrial Claim Appeals Office*, 800 P.2d 1339, 1340–41 (Colo. App.1990), the court of appeals defined a "medical impairment" as an impairment that "interfere[s] with or otherwise ha[s] an impact upon a person's physical functions." *Gonzales*, 935 P.2d at 27. The court then held that the only impairment that entitles a claimant to permanent partial disability benefits under section 8–42–107 is one that "affects a person's physical functions." *Id.* We do not find *Boice* instructive on the issues considered here.

*Boice* involved an interpretation of the re-employment statute [6] that was repealed before section 8–42–107 was enacted. The injured claimant in *Boice* had fractured his left elbow. He was re-employed at his pre-injury rate of pay and received the usual wage adjustments. Thus, under the re-employment statute, he was entitled to an award for permanent medical impairment if he sustained a loss of physical function, but not entitled to disability benefits because he had not lost earning capacity. *See Boice*, 800 P.2d at 1340–41. Hence, *Boice* focused on a method of defining medical impairment in contrast to loss of earning capacity for disability benefit purposes.

*Boice* was based on the prior statutory scheme that differentiated between loss of physical function and loss of earning capacity. The current statutory scheme for the evaluation of permanent partial impairment abolishes that distinction. Moreover, as noted above, the new statute requires that impairment ratings be based on the AMA Guides, which in turn, define impairment as "an alteration of an individual's health status that is assessed by medical means." AMA Guides 1 (3d ed. rev.1990). The loss of physical function (as opposed to earning capacity) definition under the old law restricts the broader definition of "impairment" intended under the new law.

 In sum, Gonzales sustained a permanent medical impairment measured under section 8–42–107(8) and the AMA Guides. Although his partial blindness is compensated as a scheduled injury under section 8–42–107(2)(gg), his cosmetic deformity is classified as an injury to the head and is not on the

---

6. The re-employment statute appeared as section 8–51–108(4), 3 C.R.S. (1989 Supp.) and provided:

> In any case where an employer re-employs or continues the disabled employee at work in the employment of the employer at the employee's pre-injury rate of pay and extends to the employee the usual wage adjustments, the employee's permanent partial disability award

shall be limited to permanent medical impairment or a payment under section 8–51–104, whichever is less.

This section was repealed in 1990. The current law, adopted in 1991, encourages re-employment of "injured employees at their pre-injury wages including any wage increases" by allowing a "premium dividend of up to ten percent" for an employer. § 8–42–107.6, 3 C.R.S. (1997).

schedule. Thus, cosmetic deformity of the eye as it affects the functioning of the face is to be rated under section 9.2 of the AMA Guides and benefits are to be calculated for a whole person impairment under section 8–42–107(8). Since Gonzales sustained both scheduled and non-scheduled injuries, his scheduled injury must be converted to a whole person impairment rating and combined with the non-scheduled whole person rating to arrive at Gonzales' permanent partial disability award. *See Mountain City Meat Co. v. Oqueda*, 919 P.2d 246, 254 (Colo. 1996)(when work-related accident results in both scheduled and non-scheduled injury, scheduled injury must be converted to a whole person impairment rating and combined with non-scheduled injury's whole person impairment rating in calculating permanent partial disability benefits).

Gonzales has suffered an injury that the AMA Guides presume could cause two different types of functional impairments. First, his ocular function was affected; and second, his communication or vocational function was affected. The functional components of the injuries qualify them as impairment, not just a cosmetic injury.

### III.

We further conclude that Gonzales' award for the loss of his social and vocational function by reason of ocular disfigurement is not precluded by the terms of section 8–42–108. If a court can give effect to the commonly accepted and understood meaning of the language used in a statute, it should construe the statute as written. *See Askew*, 927 P.2d at 1337. When the General Assembly adopts a comprehensive regulatory scheme such as the Workers' Compensation Act, the legislation should be construed as a whole to give effect to all its parts. *See id.* If separate clauses in the same statutory scheme may be harmonized, but would be antagonistic under a different construction, the court should adopt the construction that results in harmony. *See id.; Mountain City Meat*, 919 P.2d at 253.

Here, section 8–42–101(3.7) provides that *all* physical impairment ratings shall be based on the AMA Guides. Section 8–42–108 provides for a disfigurement award "*in addition to all other compensation benefits* provided in this article." § 8–42–108, 3B C.R.S. (1996 Supp.)(emphasis added). Gonzales' benefits for cosmetic deformity calculated under section 8–42–107(8) and the AMA Guides are "other compensation benefits." An award for a non-scheduled injury predicated upon a facial deformity does not displace an award under section 8–42–108. Benefits that might be available under section 8–42–108 are to be awarded in addition to benefits for scheduled injuries under section 8–42–107(2) and for cosmetic deformities compensable under section 8–42–107(8). If the General Assembly had chosen to eliminate the possibility that an injured claimant could recover for both cosmetic deformity under section 8–42–107(8) and disfigurement under section 8–42–108, it could easily have accomplished that result. It did not do so.

Section 8–42–107 indicates that when medical impairment benefits are payable, they shall be "limited to medical impairment benefits as specified in . . . this section." § 8–42–107(1)(a), 3 C.R.S. (1997). The statute establishes the parameters for medical impairment benefits but does not preclude other recovery. The language in section 8–42–108 that provides for cosmetic disfigurement benefits in addition to other benefits would itself be meaningless if the language of 8–42–107 were read to exclude all other recovery. The statutes can be harmonized, and, thus, we do so.

### IV.

Because the AMA Guides specify that a cosmetic deformity to the face does impair an individual's function, it may be calculated as a non-scheduled injury and added to the scheduled whole person rating. Such an award is not precluded by the additional remedy available under section 8–42–108.

For the reasons set forth herein, we reverse the decision of the court of appeals and remand the case with directions that the ICAP decision be reinstated.

VOLLACK, C.J., dissents.

Chief Justice VOLLACK dissenting:

The majority holds that the cosmetic portion of petitioner's injury qualifies as a "medical impairment" under section 8–42–107, 3 C.R.S. (1997). In my view, a cosmetic deformity is not a "medical impairment" because it does not result in a loss of function. The majority further holds that petitioner may recover for the cosmetic deformity under both section 8–42–107 and section 8–42–108, 3 C.R.S. (1997). In my view, such double recovery is prohibited both by the exclusive nature of section 8–42–108 and by the plain meaning of section 8–42–107. Accordingly, I dissent.

## I.

Section 8–42–107 provides in part:

(1) **Benefits available.** (a) When an injury results in permanent medical impairment, and the employee has an injury or injuries enumerated in the schedule set forth in subsection (2) of this section, the employee shall be limited to medical impairment benefits as specified in subsection (2) of this section.

(b) When an injury results in permanent medical impairment and the employee has an injury or injuries not on the schedule specified in subsection (2) of this section, the employee shall be limited to medical impairment benefits as specified in subsection (8) of this section.

§ 8–42–107(1), 3 C.R.S. (1997). In interpreting a statute, our primary task is to give effect to the intent of the legislature. *See In re Marriage of Francis*, 919 P.2d 776, 781 (Colo.1996). To determine legislative intent, we look first to the words used in the statute. *See Pearson v. District Court*, 924 P.2d 512, 516 (Colo.1996). Statutory terms must be interpreted in accordance with their plain and ordinary meaning. *See Farmers Ins. Exch. v. Dotson*, 913 P.2d 27, 32 (Colo.1996).

However, words that have acquired a particular meaning shall be construed accordingly. *See Resolution Trust Corp. v. Heiserman*, 898 P.2d 1049, 1054 (Colo.1995).

The majority holds that the cosmetic deformity suffered by petitioner constitutes a "medical impairment" under section 8–42–107. I disagree. In my view, a cosmetic deformity that does not result in a loss of function is not a "medical impairment." The term "medical impairment" has been defined as a "loss of the physical *function* of a member of the body, or of the body as a whole." *See Boice v. Industrial Claim Appeals Office*, 800 P.2d 1339, 1340–41 (Colo.App.1990) (emphasis added).[1] Therefore, a "medical impairment" exists only when an injury results in a loss of function. In this case, the authorized treating physician determined that petitioner's eye injury resulted in an 81% loss of function. However, this portion of the injury, for which petitioner was awarded benefits under section 8–42–107, is not in dispute. The disputed issue is whether petitioner can also receive benefits under section 8–42–107 for what his treating physician labeled a "cosmetic deformity." In assessing the deformity, the physician never stated or implied that it was a functional, as opposed to a cosmetic, impairment. In fact, the physician noted that the cosmetic deformity was *in addition to* the 81% loss of function. Because the cosmetic deformity is separate and distinct from the functional loss, this portion of petitioner's injury does not qualify as a "medical impairment" under section 8–42–107.

The majority concludes, however, that the cosmetic deformity qualifies as a functional impairment. In reaching this conclusion, the majority relies on the American Medical Association, *Guides to the Evaluation of Permanent Impairment* (revised 3d ed. 1990) (AMA Guides). In my view, the statute, and

1. The majority argues that because *Boice* construes former section 8–51–108, 3B C.R.S. (1989 Supp.), which was repealed and reenacted as section 8–42–110, 3B C.R.S. (1990 Supp.), the definition of "medical impairment" set forth in *Boice* is irrelevant. I disagree. When the General Assembly added "medical impairment" to section 8–42–107 in 1991, it was fully aware of *Boice* and the definition of "medical impair-

ment" set forth therein. *See Heiserman*, 898 P.2d at 1054 (stating that the legislature is presumed to have acted with full knowledge of relevant judicial precedent). Because our primary task is to give effect to the intent of the General Assembly, I believe that *Boice* is relevant in determining the meaning of "medical impairment" as used in section 8–42–107.

not the AMA Guides, is the proper authority for evaluating whether a cosmetic deformity constitutes a "medical impairment." The majority looks to the AMA Guides because the statute requires a treating physician to use them in determining a claimant's "medical impairment rating." *See* § 8–42–101(3.5), 3B C.R.S. (1992 Supp.); § 8–42–107(8)(c), 3B C.R.S. (1992). However, these provisions of the statute do not apply unless a claimant suffers from a "medical impairment." According to section 8–42–107, such an impairment is a threshold requirement for permanent partial disability benefits. *See* § 8–42–107 (providing benefits only "[w]hen an injury results in permanent medical impairment"). Therefore, if there is no "medical impairment," no benefits can be awarded, and there is no need to determine a "medical impairment rating" by looking to the AMA Guides. Jumping ahead to the AMA Guides improperly prioritizes the AMA Guides over the requirements set forth in the statute. *See Pearson*, 924 P.2d at 516 (explaining that the first step in determining legislative intent is to look to the words used in the statute).[2]

According to the statute, an injury must result in a loss of function to qualify as a "medical impairment." In my view, a "cosmetic deformity," by definition, is not a functional loss. Therefore, I believe that the cosmetic portion of petitioner's injury does not qualify as a "medical impairment."

## II.

Section 8–42–108, which governs benefits for disfigurement, provides as follows:

If any employee is seriously, permanently disfigured about the head, face, or parts of the body normally exposed to public view, the director, in addition to all other compensation benefits provided in this article, may allow such sum for compensation on account thereof as the director may deem just, not exceeding two thousand dollars.

§ 8–42–108.

In my view, section 8–42–108 sets forth the exclusive remedy for a purely cosmetic disfigurement. Under this section, a claimant who is "seriously, permanently disfigured about the head, face, or parts of the body normally exposed to public view" may recover up to two thousand dollars. *See id.* Thus, when an injury results in a cosmetic disfigurement, as opposed to a functional impairment, the right to benefits arises under section 8–42–108. *See Arkin v. Industrial Comm'n*, 145 Colo. 463, 465–69, 358 P.2d 879, 880–82 (1961) (analyzing disfigurement separately under the predecessor to section 8–42–108); *Twilight Jones Lounge v. Showers*, 732 P.2d 1230 (Colo.App.1986) (analyzing disfigurement solely under the predecessor to section 8–42–108).

The majority, however, holds that petitioner may recover for a cosmetic disfigurement under both section 8–42–107 and section 8–42–108. In my view, this holding not only contradicts the exclusive nature of section 8–42–108, it also disregards the plain meaning of section 8–42–107. According to section 8–42–107, when a claimant qualifies for medical impairment benefits, the claimant's recovery "*shall be limited to* medical impairment ben-

**2.** Furthermore, the AMA Guides simply do not characterize a cosmetic deformity as a functional impairment. In support of its position, the majority cites section 9.2 of the AMA Guides, which provides in part:

> The face has a unique role in communication. No other part of the body serves as specific a function for personal identity and for expression of thought and emotion. Facial expressions are an integral part of normal living posture. A degree of normalcy is expected for effective verbal and nonverbal communication. . . .
>
> . . . .
>
> The face is such a prominent feature of a person that it plays a critical role in his physical, psychological and emotional makeup. Fa-

cial disfigurement can affect all these components and can result in social and vocational handicap.

AMA Guides § 9.2. Although section 9.2 observes that the face serves "a function for personal identity," this observation does not mean that a facial deformity should be treated as a functional impairment. On the contrary, section 9.2 expressly states that its provisions, including those on facial disfigurement, do not refer to functional impairment: "In evaluating permanent impairment from a disorder of the face, functional capacity as well as structural integrity are considered. *Impairment in this section [9.2] is limited to abnormality in structural integrity only. (For loss of function, refer to [other sections]).*" *Id.* (emphasis added).

efits as specified in ... *this section.*" *See* § 8–42–107(1). Thus, if petitioner recovers under section 8–42–107 as the majority allows, double recovery under any other section, including section 8–42–108, is expressly prohibited. Instead of disregarding this prohibition, I would hold that section 8–42–108 provides the sole and exclusive remedy for cosmetic disfigurement.

### III.

In my view, the cosmetic deformity suffered by petitioner, which in no way affects the function of his eye, is not a "medical impairment" under section 8–42–107. This view not only gives effect to the intent of the General Assembly, it also avoids the possibility of double recovery, which is prohibited by the exclusive nature of section 8–42–108 and the plain meaning of section 8–42–107. Accordingly, I dissent.