No. 12,229.

JOHN THOMPSON GROCERY STORES CO., ET AL. *v.* INDUSTRIAL COMMISSION, ET AL.

Decided May 6, 1929.

Mr. GLENN L. DALY, Mr. JOEL E. STONE, for plaintiffs in error.

Mr. ROBERT E. WINBOURN, Attorney General, Mr. ARTHUR L. OLSON, Assistant, for defendants in error.

*Department One.*

MR. JUSTICE ALTER delivered the opinion of the court.

THIS is a writ of error, prosecuted by the John Thompson Grocery Stores Company, a corporation, and Southern Surety Company, a corporation, to review a judgment of the district court affirming the findings and award of the Industrial Commission of Colorado, which adjudged compensation to James F. Healy for personal injuries accidently sustained in the course of his employment. The John Thompson Grocery Stores Company will hereinafter be referred to as the employer; the Southern Surety Company as the insurer; the Industrial Commission of Colorado as the commission; and James F. Healy as the employe.

The employer and insurer rely upon 16 assignments of error to reverse this judgment, but we shall classify and consider the assignments under two general subdivisions: (1) The commission acted in excess of its powers; and (2) the findings of fact do not support the award.

The undisputed facts in this case are as follows: The employe, on November 2, 1926, while engaged in work for the employer, slipped, and received a scratch on his left leg. He continued in his employment until Novem-

ber 14, when the pain in his leg became intense. He went home and called his physician. The physician found the employe's left leg was infected. A nurse was immediately called, and remained in attendance for four weeks. Several operations were necessary, and the physician was obliged to make frequent visits, sometimes several each day. Eventually the patient entirely recovered.

The proper notice of injury was filed with the commission, and the insurer filed its admission of general liability. Upon order of the commission, the insurer paid the employee temporary disability at the rate of $12 each week, from November 24, 1926, until August 15, 1927, when the employe was discharged as completely recovered. The insurer also paid the sum of $200 for medical and surgical treatments and nursing, as provided by section 4425, C. L. 1921.

The employe returned to work on September 1, 1927, he and his physician admitting that there was no permanent disability.

The insurance carrier paid, to the employe, the sum of $452.57 for temporary disability, and paid the further sum of $200 for medical and surgical treatments and nursing. The employe had incurred expenses, for medical and surgical attention, nursing and incidentals, in excess of these sums.

On September 29, 1927, the employe filed an application for hearing before the commission, setting forth that the nature of the controversy was: "Inasmuch as insurance carrier has refused to pay for medical treatments beyond $200.00 in value; that at the time of the exhaustion of said sum claimant's disability was equivalent to the total loss of the left leg above the knee and claimant had he not procured additional medical and surgical treatment, would have suffered such disability permanently. Wherefore claimant prays compensation for 139 weeks for such permanent disability."

A hearing was had upon this application, and the pertinent portions of the findings and award of the commission are as follows:

"The total amount of medical and hospital bills presented is $607.50, of which amount the respondents have paid $168.00 for hospital expenses; $5.00 to the anaesthetist, and $27.00 to Doctor Johnson. The remainder of the medical and hospital expenses are unpaid and the respondents deny liability therefor."

"Claimant filed his application for hearing herein on September 30, 1927. His application states that inasmuch as the insurance carrier has refused to pay for the medical and hospital treatments in excess of $200.00 in value and inasmuch as at the time of the exhaustion of said sum, claimant's disability was equivalent to the total loss of the left leg above the knee, that the claimant is therefore, entitled to compensation for 139 weeks for such permanent disability. Claimant has received a total of $452.57 as compensation for temporary disability herein. If the attitude of the respondents is correct, then their total liability herein is $652.27, which means that the claimant would have a balance of $44.77, after paying the medical and hospital expenses and after being off from work from November 15, to August 15, 1927, a period of nine months."

"The undisputed medical testimony in this case is to the effect that the claimant's condition required several operations and that if he had not received all these operations, plus the best of medical care, that he would have had a permanent disability in this case equal to the amputation of the leg at the knee, or possibly a loss of life."

"Section 51 of the Act requires that the employer shall furnish medical and hospital care at the time of the injury and thereafter during the disability but not to exceed sixty days from the date of the accident to cure and relieve from the effects of the injury."

"The $200.00 expenditure in this case had been reached in less than four weeks from the date of claimant's in-

jury. The method of handling expenditures under section 51 varies greatly with the different companies writing compensation insurance in Colorado. Many of the companies exceed the $200.00 limit and especially is this true in those cases where the expenditure of money for medical services results in the rehabilitation of the claimant.''

''Our Supreme Court has heretofore ruled that where the respondent carrier refuses to furnish additional medical and hospital expenses at the end of the sixty-day period, that the claimant is entitled to disability determined as of that date.''

''Doctor Johnson testified that the first operation on the claimant's injured leg was performed in December, 1926, and that following this operation the leg was reoperated under a local anaesthetic five different times.''

''Following the rule heretofore announced in this case, the finding is that the claimant is entitled to 139 weeks compensation from December 15, 1926, said date being the date after which respondents failed, neglected and refused further medical and hospital treatment at their expense.''

''It is, therefore, ordered that the respondents pay compensation to claimant herein at $12.00 per week, from November 24, 1926, to December 15, 1926; and further compensation thereafter for 139 weeks, as compensation for the permanent disability herein stated, as of December 15, 1926, and as provided by the findings herein, less compensation heretofore paid, plus payment of medical and hospital expenses as provided by law, and which has heretofore been limited, as herein stated.''

We thus find that there is no contention that the employe suffered any permanent disability; that the insurer had not promptly paid the entire amount due for temporary disability; and had not also paid the sum of $200, fixed as the amount which should be paid for medical, surgical and hospital expenses. The entire controversy in this case is whether or not the employe is entitled to have his disability fixed at the time of the exhaustion of

the $200 allowance for medical, surgical and hospital fees. If so, the undisputed testimony is "that he would certainly have lost his left leg, and stood a good chance of losing his life."

1. The commission does not find that the employe suffered a permanent disability, and, in fact, the temporary disability had entirely ceased on the 15th day of August, 1927. The commission does find that if the employe had not had medical and surgical attention, in addition to that which could have been obtained for the sum of $200, "that he would have had a permanent disability in this case equal to the amputation of the leg at the knee, or possibly a loss of life." The testimony in this case would have justified the commission in finding that the employe was *dead* if, in fact, it justified it in finding that he had lost his left leg at the knee, when, in truth and in fact, the commission had before it a claimant who had a perfectly good left leg, and the employe and his physician frankly admitted that there was no permanent disability as the result of the injury. What might have happened, if the medical and surgical services had not been continued, is interesting as a possibility, but we, and the commission, are concerned with actualities, rather than possibilities or probabilities.

Section 4425, C. L. 1921, provides: "Every employer regardless of his method of insurance shall furnish such medical, surgical, nursing and hospital treatment, medical, hospital and surgical supplies, crutches and apparatus, as may reasonably be needed at the time of the injury and thereafter during the disability, but not exceeding sixty days from the date of the accident and $200 in value to cure and relieve from the effects of the injury; * * * Provided, however, that no plan shall be approved by the commission which relieves the employer from the burden of assuming and paying for any part of the medical, surgical and hospital services and supplies hereinabove required." * * *

Our attention is directed to that portion of the commission's findings and award which reads as follows: "Our

Supreme Court has heretofore ruled that where the respondent carrier refuses to furnish additional medical and hospital expenses at the end of the sixty-day period, that the claimant is entitled to disability determined as of that date.''

The commission is incorrect in interpreting any decision of this court as so holding. We assume, from the briefs of counsel, that our opinion in *London Guarantee & Accident Co. v. Industrial Commission,* 72 Colo. 177, 210 Pac. 70, is the case that the commission misconstrued and followed, but that case does not hold as the commission states, nor are the facts in that case applicable to the instant case. We held, inter alia, in the London case, supra, that the commission could not award compensation for an assumed disability, using the word *assumed* in contradistinction to actual. The medical attention required by the act itself is limited to 60 days in time, and not to exceed $200 in value. Inasmuch as the attending physician, furnished by the employer or the insurance carrier, had determined, and definitely announced, that the employe had received all the benefits possible to be derived from medical and surgical treatments, it was fit and proper to fix his disability as of the time the physicians made their announcement.

We also held, in the London case, that if the claimant was left to shift for himself, and subsequently underwent operations at his own expense, thereby relieving himself of the disability, the commission, having made its award, we should sustain it.

The London case is readily distinguished from the case at bar, because here the physician never determined that further treatments and operations would not be beneficial to the employe, and did not determine that he had any permanent disability. In the London case, supra, the treatment which the claimant underwent resulted in reducing his permanent partial disability from 80 per cent to 33⅓ per cent, and the company claimed the advantage of the decreased disability.

We said in the London case, supra, that, "If the theory of the plaintiffs in error was sustained, it would be equivalent to penalizing the claimant for taking measures to protect himself by diminishing his disability to perform labor."

Our decision, in the London case, is not authority for the statement that if the insurer fails to furnish medical, surgical and hospital treatments in excess of the sum of $200, that the disability may be determined at the time of the exhaustion of that sum, and an award accordingly made.

It may well be, that many of the insurance companies furnish medical, surgical and hospital treatments far in excess of the sum of $200, and for this we commend them, but inasmuch as the legislature has seen fit to fix the period of time as 60 days, and the amount at $200, if this needs correction, it is a matter for the legislature rather than for the courts. Ofttimes the treatment for a longer period than 60 days, and a sum in excess of the $200, may result in diminishing the sum total due for permanent partial or total disability.

The statute is plain, and the commission may not disregard it, and thereby impose upon the employer or insurance carrier, a burden greater than that fixed by statute. The commission indulged in a wholly fanciful and highly speculative theory in awarding compensation to the employe upon the assumption of the total loss of the left leg at the knee, when all the facts conclusively show that not only had the employe a good left leg, but that his temporary disability had entirely disappeared, and that there was not now, nor had there been, any permanent disability.

We said, in the London case, supra, page 180, that, "Neither the statement that the Industrial Commission's award for increased permanent disability was an indirect method of paying for medical attention beyond the period of sixty days following the accident, nor that the award compels the employer and insurance carrier to pay for

an assumed disability which the claimant did not suffer, is borne out by the findings of fact.''

Inferentially we held that if these conditions were borne out by the findings of the commission, and were supported by the evidence, our determination of the matter would have been different from the conclusion announced in that case.

2. The findings of fact, by the commission, are: That the employe fully recovered from the effects of the accident; that he, in fact, suffered no permanent total or partial disability. Yet, upon the theory heretofore explained, the award was for an amount to which the employe would have been entitled had he lost his left leg at the knee. With these findings in mind, it requires no argument to conclude that it does not support the award.

It may be, that the amount allowed by statute, to rehabilitate and restore to usefulness employes who have accidentally sustained injuries in the course of their employment, is wholly inadequate and insufficient, but, assuming this to be true, it is a matter for legislative correction. The commission and the court are limited by the provisions of the statutes in making their awards, and in entering their judgments, and if employers, or their insurance carriers, can be compelled to furnish medical, surgical, and other services in excess of the statutory amount or time, upon penalty of having a fanciful and theoretical disability fixed, when, in fact, none exists, the statute is meaningless. The commission and the courts cannot do indirectly, what is prohibited by limitation, directly.

The judgment of the district court is therefore reversed, with instructions to set aside its approval judgment, and to remand the cause to the commission, directing it to vacate its supplemental award, and, in lieu thereof, enter its final award denying the employe's application for compensation.

MR. CHIEF JUSTICE WHITFORD, MR. JUSTICE ADAMS, and MR. JUSTICE CAMPBELL concur.