No. 20,201.

HAWKEYE-SECURITY INSURANCE COMPANY, ET AL., *v.*
CLINTON S. TUPPER AND INDUSTRIAL COMMISSION
OF COLORADO.
(380 P. [2d] 31)

Decided March 25, 1963.

Messrs. WORMWOOD, O'DELL and WOLVINGTON, Mr.
WILLIAM P. DEMOULIN, for plaintiffs in error.

Messrs. HANEY and HOWBERT, Mr. BYRON L. AKERS, JR., Mr. ROBERT L. RUSSELL, for defendant in error CLINTON S. TUPPER.

*En Banc.*

MR. JUSTICE HALL delivered the opinion of the Court.

THE parties appear here in the same order as in the trial court.

We refer to Jones as the employer, to Hawkeye-Security Insurance Company as the insurance carrier, to Tupper as the claimant, and to the Industrial Commission as the commission.

On March 7, 1961, claimant suffered compensable injuries to his left foot which necessitated amputation of the left leg six and one-fourth inches below the knee. On May 1, 1961, he was fitted with a prosthetic leg and on that date began wearing it and was, on May 13, 1961, "capable of returning to work, at least on a somewhat limited basis."

The insurance carrier admitted liability and offered to pay and is willing to pay to claimant compensation at the maximum weekly rate for 139 weeks as provided by C.R.S. '53, 81-12-4, which provides:

"In case an injury results in a loss set forth in the following schedule, the injured employee, in addition to compensation to be paid for temporary disability, shall receive compensation for the period as specified: The * * * Loss of a leg at or above the knee, where the stump remains sufficient to permit the use of an artificial limb . . . 139 weeks.

"(3) Whenever amputation is made between any two joints mentioned in this schedule * * * the resulting loss shall be estimated as if the amputation had been made at the joint nearest thereto [here the knee]. * * *."

Medical testimony offered by the claimant was to the

effect that claimant "had a normal recovery, * * * somewhat faster than the average"; that on May 1, 1961, he was wearing his prosthetic leg, was doing very well and able to return to work;

"I would estimate his disability as a working unit on the basis of the average disability for an amputation at this level being, 70% disability for the leg and 28% disability for the man. * * * . I would estimate that his disability might well run somewhat more than average, perhaps 30 to 35% for the man."

On June 30, 1961, the referee entered his order directing the insurance carrier to pay temporary disability through April 30, 1961, and:

" * * * thereafter to pay compensation at that same weekly rate [$40.25] until the additional sum of $10,465.00 shall have been paid, for and on account of maximum permanent partial disability."

The insurance carrier contends that claimant's rights to permanent disability are limited, as provided by 81-12-4, supra. It had the order of award reviewed by the referee, the commission and the district court. All affirmed the order.

The employer and his insurance carrier are here by writ of error seeking reversal, contending that the commission's award of June 30, 1961, is erroneous, and that under the statute claimant is entitled to compensation for 139 weeks at the maximum rate of permanent disability.

Only one question is presented for our consideration, and that is whether claimant under the facts as presented may be awarded compensation in excess of that provided by 81-12-4.

Claimant contends that the commission in its discretion may make an award as provided in 81-12-9, and this even though 81-12-9 at the outset provides that:

"Where an accident causes injury resulting in permanent partial disability, *except the sustaining of any one*

*of the injuries specifically covered by sections 81-12-4 to 81-12-7 inclusive,* the injured employee shall be deemed to be permanently disabled \* \* \* ." (Emphasis supplied.)

It is difficult to conceive of a situation more clearly covered by 81-12-4 than is that of claimant. One might conclude that the statute was written for the express purpose of defining the rights and duties of the parties before us. If it does not cover claimant's situation, then it does not cover any specific injury and is meaningless and a nullity. The statute is not ambiguous or indefinite. It needs no interpretation or construction.

Nearly all compensation acts have provisions for "scheduled injuries" similar to 81-12-4.

The general rule governing cases such as we have here is stated in 99 C.J.S. 1104, Workmen's Compensation, §306:

" \* \* \* the compensation acts ordinarily contain a schedule of specific injuries to which attach specific awards of compensation, and any award of compensation as to an injury included in the schedule is limited and determined thereby, \* \* \*.

\*    \*    \*

"Scheduled compensation for a specific injury is in the nature of damages or indemnity for the physical or functional loss and is to be awarded even though there is no loss of earning power or wages, and without regard to the extent of the disability suffered. \* \* \* ."

And, §310, page 1118:

"Thus, it is generally held that for a specific injury relating solely to the injured member claimant cannot have compensation for disability, either total or partial. To obtain compensation in addition to that scheduled for the injured member, claimant must show that some other part of his body is affected. Where the injury is confined to the scheduled member, and there is no impairment of any other part of the body because of

such injury, the employee is limited to the scheduled compensation even though other considerations, such as age, lack of training, or other conditions peculiar to the individual effect a total or partial industrial incapacity."

Here, the *injured member* is claimant's leg. There is no proof of injury to any other member of claimant's body nor is there any proof of injury to claimant's leg above the point of amputation.

█ In *Cresson Co. v. Industrial Com.*, 90 Colo. 353, 9 P. (2d) 295, the claimant suffered injuries which resulted in the amputation of the little finger of his left hand, and amputation of his index, middle and ring fingers of his right hand. The commission awarded claimant compensation based upon a finding of 25% disability as a working unit under 4452, C. L. 1921, as amended by Laws 1929 (substantially the same as 1960 Perm. Supp., C.R.S. 81-12-9). This award was affirmed by the district court and here reversed. It was there said:

"The method of determining disability provided by section 4452 [81-12-9] cannot be used when the injury is one appearing in the section 4447 [81-12-4] schedule, because by its specific terms such injuries are excluded.

"Section 4447 is clear, definite and mandatory. Each of claimant's four injuries is covered by the schedule. Compensation for each should have been added together and the total constituted the award.

"A liberal construction does not clothe the Industrial Commission or a court with power to ignore the mandatory provisions of section 4447. *Colorado Co. v. Industrial Com.*, 88 Colo. 573, 298 Pac. 955; *John Thompson Co. v. Industrial Com.*, 85 Colo. 576, 277 Pac. 789."

In *Indemnity Co. v. Industrial Co.*, 114 Colo. 91, 162 P. (2d) 413, the court had occasion to apply this statute in a case involving an accident alleged to have resulted in "total blindness of one eye." We there said:

" * * * Under the contention of the insurance carrier

here, if one who had lost a limb could, with the aid of an artificial appliance, prosecute his work effectively, he would not be entitled to the statutory indemnity for the loss of the limb, but his compensation would be based upon his lack of earning capacity or lack of ability to perform services in the usual course of his business or vocation. Should we uphold this contention, we would thereby annul the beneficent purposes of the statute and in effect repeal it. This we cannot do.

\* \* \*

"The provisions of section 352, supra [81-12-4], afford an exact method for determining indemnity to be awarded an employee for the injuries therein specified when that loss occurs in an accident arising out of and in the course of his employment. The compensation therein provided is payable irrespective of one's ability to work and irrespective of his ability to earn. When an injury listed in this section results from an industrial accident, the compensation provided by the statute limits the amount of the award, both minimum and maximum, to which the injured employee is entitled. \* \* \* ."

In *Arkin v. Industrial Commission,* 145 Colo. 463, 358 P. (2d) 879, it was said:

"The method of determining disability provided by C.R.S. '53, Cum. Supp. '57, 81-12-9, cannot be used when the injury is one appearing in sections 81-12-4 to 81-12-7 inclusive, 'because by its specific terms such injuries are excluded.' *Cresson Cons. Gold M. & M. Co. v. Industrial Comm.,* 90 Colo. 353, 9 P. (2d) 295. See *Leyden Lignite Co. v. Buddy,* 98 Colo. 452, 56 P. (2d) 52."

Counsel for claimant rely on *Leyden Co. v. Buddy,* 98 Colo. 452, 56 P. (2d) 52, and contend that the holding therein is inconsistent with the holdings in the cases referred to above and that *Leyden* lays down the proper rule and if applied to this case would demand

an affirmance. We find nothing in *Leyden* that is inconsistent with the foregoing cases. In *Leyden,* claimant did not suffer any of the scheduled losses set forth in 81-12-4. He suffered an injury to his right leg and also to his right arm. The referee found that these injuries caused 50% disability of *"right leg at the ankle"* and 35% of *"right arm at the wrist."*

There is no provision in 81-12-4 for loss of an *arm at the wrist* or of a *leg at the ankle.* There is provision for loss of "a *hand* at the wrist," and for loss of a *"foot* at the ankle." Claimant, in Leyden, did not bring himself within the terms of 81-12-4. His injuries, as found by the commission, did not involve the loss of any "member," are not covered by 81-12-4 and, not being specified therein, are not among those excepted in 81-12-9, which excepts those covered by 81-12-4.

Certainly Tupper suffered the "loss of a leg at or above the knee, where the stump remains sufficient to permit the use of an artificial limb." He was supplied with an artificial limb and he was using it within two months of his injury. He comes squarely within the terms of 81-12-4 and is expressly excluded from 81-12-9.

The judgment is reversed and the cause remanded to the trial court with directions to order the commission to vacate its award and to award claimant compensation as provided by 81-12-4.

MR. JUSTICE MOORE not participating.