MOUNTAIN CITY MEAT CO. and
Colorado Compensation Insurance
Authority, Petitioners,

v.

The INDUSTRIAL CLAIM APPEALS OF-
FICE OF the STATE OF COLORADO
and Emiliano Oqueda, Respondents.

No. 94CE0015.

Colorado Court of Appeals,
Div. C.

Jan. 26, 1995.

Rehearing Denied March 30, 1995.

Certiorari Granted Oct. 30, 1995.

Colorado Compensation Ins. Authority, Carolyn A. Boyd, Denver, for petitioners.

No appearance by respondent Indus. Claim Appeals Office.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, Pepe J. Mendez & Associates, P.C., Pepe J. Mendez, Denver, for respondent Emiliano Oqueda.

Gordon & Macdonald, P.C., William J. Macdonald, Denver, for amicus curiae Workers' Compensation Educ. Ass'n.

Opinion by Judge NEY.

Mountain City Meat Company and the Colorado Compensation Insurance Authority (collectively CCIA) seek review of the order of the Industrial Claim Appeals Panel which held that all effects of an injury are to be rated in accordance with § 8–42–107(8)(c), C.R.S. (1994 Cum.Supp.) when it is determined that the injury caused at least one whole-person impairment. We affirm the order.

Claimant sustained an admitted industrial injury in late 1992 to his neck and shoulder. Following an independent medical examination (IME) pursuant to § 8–42–107(8)(b), C.R.S. (1994 Cum.Supp.), claimant's permanent medical impairment from these injuries was rated as 9% of the whole person. The physician determined that claimant sustained an impairment to the range of motion in his neck, measured as 7% of the whole person, and that claimant incurred impairment of the left shoulder measured as 3% of the upper extremity. The physician then determined that this scheduled upper extremity injury resulted in a 2% impairment of the whole person.

CCIA admitted final liability for permanent medical impairment benefits of 7% for claimant's neck injury in accordance with § 8–42–107(8), C.R.S. (1994 Cum.Supp.) (as an unscheduled impairment) and of 3% for the upper extremity injury as a scheduled impairment in accordance with § 8–42–107(2), (1994 Cum.Supp.). This calculation would result in an award of $11,376. Claimant objected to the 3% scheduled injury rating.

Following a hearing, the Administrative Law Judge (ALJ) found, based upon the stipulation of the parties, that claimant continued to experience pain and "problems" in the top of his shoulder and that "claimant's shoulder injury affects his arm." The ALJ concluded that, since injury to the shoulder was not an injury to an upper extremity, it was not a scheduled injury and, thus, that the 9% impairment rating as a whole person determined by the IME was correct. This calculation results in an award of $14,626.

The Panel affirmed, and determined that since claimant sustained an undisputed non-scheduled impairment to his neck, it was not the legislative intent to require a "split" of awards between scheduled and non-scheduled ratings resulting from a single injury. The Panel further determined, that if, as here, there has been any non-scheduled impairment, compensation for all impairments resulting from the injury-causing event should be measured by a percentage of the whole person. The Panel concluded that it was, therefore, not necessary to review the ALJ's determination that the shoulder injury was not a scheduled injury.

CCIA contends that the Panel erred because the claimant is limited to the compensation enumerated on the schedule for a shoulder injury affecting claimant's arm. CCIA argues that § 8–42–107(1)(a) and (b), C.R.S. (1994 Cum.Supp.) should be construed to require the ALJ to split ratings where possible between the schedule and § 8–42–107(8)(c). We disagree.

## I

The issue we are asked to resolve is whether all effects of a single industrial injury are to be compensated pursuant to a whole person rating in accordance with § 8–42–107(8) when it is determined that the injury caused some non-scheduled impairment.

Section 8–42–107(1), C.R.S. (1994 Cum. Supp.) provides:

(a) *When an injury results in permanent medical impairment, and the employee has an injury or injuries enumerated in the schedule* set forth in subsection (2) of this section, the employee shall be limited to medical impairment benefits as specified in subsection (2) of this section.

(b) *When an injury results in permanent medical impairment and the employee has an injury or injuries not on the schedule specified in subsection (2)* of this section, the employee shall be limited to medical impairment benefits as specified in subsection (8) of this section. (emphasis added).

Section 8–42–107(2) sets out a schedule of specific injuries and includes, in § 8–42–107(2)(a), C.R.S. (1994 Cum.Supp.), the loss of an arm at the shoulder. Section 8–42–107(7)(b), C.R.S. (1994 Cum.Supp.) generally reduces the scheduled award proportionate to the claimant's sustained loss of use when an injury causes less than a total loss or total loss of use. It provides that:

the amount of permanent partial disability shall be the proportionate share of the amount stated in the ... schedule for the total loss of a member....

In contrast, if the claimant suffers an injury not described in the schedule or otherwise excluded from it, § 8–42–107(8)(c) requires that a medical impairment rating be determined as a percentage of the whole person based on the *American Medical Association Guides to the Evaluation of Permanent Impairment*.

■ We note that in § 8–42–107(1)(a) and (b), the term "injury" appears to have two meanings. When used for the first time in those subsections, the term "injury" apparently refers to the accident or event which results in permanent medical impairment.

However, the second use of the term refers to the manifestation in a part or parts of the body which have been impaired or disabled as a result of the industrial accident. *See Hawkeye–Security Insurance Co. v. Tupper,* 152 Colo. 12, 380 P.2d 31 (1963).

We further note that the record and briefs indicate that, in various cases in which this issue has arisen, the Panel has reached inconsistent results. In some cases, the Panel has required a split of awards where scheduled and non-scheduled injuries have resulted from a single industrial accident. In other such cases, the Panel has determined the award of benefits in accordance with § 8–42–107(8)(c).

■ Ambiguity exists in a statute when the language used is reasonably susceptible of more than one meaning. *Danielson v. Castle Meadows, Inc.,* 791 P.2d 1106 (Colo. 1990).

A plausible reading of these statutes is that when all of the impairments appear on the schedule, the claimant is limited to scheduled benefits under § 8–42–107(1)(a). However, § 8–42–107(1)(b) may also be read to mean that when the claimant sustains *one or more* impairments *not on the schedule,* the "limitations" are those contained in § 8–42–107(8).

■ We conclude that in previous cases in which a claimant has sustained both scheduled and non-scheduled injuries, either of the inconsistent interpretations reached by the Panel is supported by a fair reading of § 8–42–107(1)(a) and (b). Because a reasonable interpretation of these subsections may result in inconsistent awards, we conclude that the subsections are ambiguous.

## II

■ Because the subsections are ambiguous, we must discern the General Assembly's intent in order to construe the Workers' Compensation Act (Act) in a manner which gives consistent, harmonious, and sensible effect to all its provisions. *See Henderson v. RSI, Inc.,* 824 P.2d 91 (Colo.App.1991).

■ The cardinal rule to be applied when interpreting a statute is to ascertain and to give effect to legislative intent as expressed in the statute itself. *Henderson v. RSI, Inc., supra.*

If a statute is ambiguous, the court, in determining the intention of the General Assembly, may consider, among other matters: the administrative construction of the statute; the legislative declaration of the statute as well as the object to be attained by the statute; the common law or former statutory provisions, including laws upon the same or similar subjects; and the consequences of a particular construction. Section 2–4–203(a), (d), (e), (f), (g), C.R.S. (1980 Repl.Vol. 1B).

As we have noted, the Panel's construction of the Act has not been consistent.

We recognize the declared legislative intent of the Act to be the quick and efficient delivery of benefits. Section 8–40–102(1), C.R.S. (1994 Cum.Supp.).

In *World of Sleep, Inc. v. Davis,* 188 Colo. 443, 536 P.2d 34 (1975), the supreme court concluded that an award under a schedule for a percentage loss of an extremity and a disability award expressed as a percentage loss of earning capacity are mutually exclusive methods of compensation which cannot be used to evaluate the same injury. Although the Act has been modified frequently in other areas since *World of Sleep, Inc. v. Davis,* there has been no legislative repeal of the analysis contained in that case.

The construction of the Act urged by the CCIA would require the ALJ to split ratings between the schedule and § 8–42–107(8)(c) in cases in which a claimant sustains a scheduled injury as well as an non-scheduled injury from a single industrial accident. Adhering to this procedure would not, however, further the stated legislative purpose of delivering benefits quickly and efficiently. *See* § 8–40–102(1).

Moreover, determining a split rating based on the schedule and § 8–42–107(8)(c) requires the ALJ to apply two different and inconsistent procedures to an injury sustained in a single industrial accident.

■ Having applied the aids to statutory construction contained in § 2–4–203, C.R.S. (1980 Repl.Vol. 1B) we conclude that the General Assembly's intent with regard to § 8–42–107(1)(a) and (b) was for the ALJ to consider jointly under § 8–42–107(8) those injuries sustained in a single industrial accident in which any impairment is non-scheduled.

### III

Section 8–42–107(1) does not explicitly direct compensation to be divided between scheduled and non-scheduled benefits when a single injury results in scheduled and non-scheduled manifestations. The Act is silent as to the procedure to be followed in such a case. However, the Act contains language which justifies the inference that injuries which cause scheduled and non-scheduled impairment are to be considered jointly under § 8–42–107(8).

Specifically, § 8–42–107(7)(a), C.R.S. (1994 Cum.Supp.) states that when an employee sustains "two or more injuries coming under this schedule, the disabilities specified in subsections (1) to (5) of this section shall be added...." Significantly, there is no provision for the "addition" of disabilities which are scheduled and non-scheduled.

A notable distinction between scheduled and non-scheduled impairments is that they are subject to different procedural rules, particularly the IME procedure set out in § 8–42–107(8)(c) which is employed in cases of whole-body impairments. As the concepts, computations, and procedures are entirely different, the autonomy of one section is to be maintained to the exclusion of the other. Otherwise, there would be no need for the alternatives provided by these sections. *See World of Sleep, Inc. v. Davis, supra.*

Another meaningful distinction is that § 8–42–107(1)(a) limits "medical impairment benefits" to those provided in the schedule. However, § 8–42–107(1)(b) limits medical impairment benefits to those provided in § 8–42–107(8) when the claimant sustains "an injury or injuries not on the schedule."

Finally, § 8–42–101(3.7), C.R.S. (1994 Cum.Supp.) provides that all physical impairment ratings made under the Workers' Com-

pensation Act shall be based on the *American Medical Association Guides to the Evaluation of Permanent Impairment.* The physical impairment ratings contained in the *American Medical Association Guides* are, however, inconsistent with the scheduled injury impairment ratings contained in § 8–42–107(2).

The conflict between the scheduled injury impairment ratings and the physical impairment ratings based on the *American Medical Association Guides* may be minimized by awarding benefits for all the impairments pursuant to § 8–42–107(1)(b) (governing unscheduled injuries) in cases in which the claimant suffers only *one* injury which affects multiple parts of the body and which results in scheduled and non-scheduled injuries.

Harmonizing the statute in this fashion is consistent with the principles of statutory construction. *See Henderson v. RSI, Inc.,* supra.

### IV

We conclude that § 8–42–107, C.R.S. (1994 Cum.Supp.) contemplates that a claimant may suffer an injury or injuries not on the schedule as well as an injury or injuries which are on the schedule, and as a result of the unscheduled injury or injuries, may be limited to the benefits provided in § 8–42–107(8). Further, because the statutes emphasize the result or results of an injury, scheduled and non-scheduled losses must be measured as a whole-person impairment when those losses or injuries arise from a single industrial accident.

As the record supports the finding that claimant's injury affecting the neck is not a scheduled injury, we perceive no error in the Panel's decision.

Because of our interpretation of § 8–42–107 we do not review the propriety of the ALJ's conclusion that a shoulder injury which affects the arm is not a scheduled injury.

The order is affirmed.

TAUBMAN and KAPELKE, JJ., concur.