**MOUNTAIN CITY MEAT CO. and Colorado Compensation Insurance Authority, Petitioners,**

v.

**Emiliano OQUEDA and The Industrial Claim Appeals Office of the State of Colorado, Respondents.**

**DeWITT TRANSPORTATION and Colorado Compensation Insurance Authority, Petitioners,**

v.

**The INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE OF COLORADO and Chalmers Shropshire, Respondents.**

**HEATING & PLUMBING ENGINEERS and Nationwide/Wausau Insurance, Petitioners,**

v.

**John R. MONACHELLI and The Industrial Claim Appeals Office of the Department of Labor of the State of Colorado, Respondents.**

**WCS, INC., d/b/a Wendy's of Colorado Springs, Inc. and Colorado Compensation Insurance Authority, Petitioners,**

v.

**INDUSTRIAL CLAIM APPEALS OFFICE and Renee M. Hernandez, Respondents.**

**DEPARTMENT OF REVENUE and Colorado Compensation Insurance Authority, Petitioners,**

v.

**Joseph C. DUROCHER and Industrial Claim Appeals Office of the State of Colorado, Respondents.**

Nos. 95SC246, 95SC329, 95SC373, 95SC432 and 95SC476.

Supreme Court of Colorado,
En Banc.

June 24, 1996.

Colorado Compensation Insurance Authority, Curt Kriksciun, Michael J. Steiner, Carolyn A. Boyd, Denver, for Petitioners in Nos. 95SC246, 95SC432 and 95SC476.

Colorado Compensation Ins. Authority, Carolyn A. Boyd, Curt Kriksciun, Denver, for Petitioners in No. 95SC329.

Gordon & Macdonald, P.C., William J. Macdonald, Denver, for Amicus Curiae Workers' Compensation Education Association in Nos. 95SC246, 95SC329, 95SC373, 95SC432 and 95SC476.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, Pepe J. Mendez & Associates, P.C., Pepe J. Mendez, Denver, for respondent Emiliano Oqueda in No. 95SC246.

Ritsema & Lyon, P.C., Fredric A. Ritsema, Michael A. Perales, Joel M. Pollack, Denver, for Petitioners Heating & Plumbing Engineers and Nationwide/Wausau Ins. in No. 95SC373.

Law Office of Cynthia M. Pring, Kathleen W. Robinson, Colorado Springs, Diane M. Astourian, Denver, for Respondent John R. Monachelli in No. 95SC373.

Pribila & Sokolow, P.C., Anthony L. Sokolow, Colorado Springs, for Respondent Renee M. Hernandez in No. 95SC432.

No appearance on behalf of Respondents Industrial Claim Appeals Office of State of Colo. and Chalmers Shropshire in No. 95SC329.

No appearance on behalf of Respondent Industrial Claim Appeals Office of Department of Labor of State of Colo. in No. 95SC373.

No appearance on behalf of Respondent Industrial Claim Appeals Office in No. 95SC432.

No appearance on behalf of Respondents Joseph C. Durocher and Industrial Claim Appeals Office of State of Colo. in No. 95SC476.

Justice HOBBS delivered the Opinion of the Court.

These consolidated appeals present the issue of whether an enumerated injury arising under the schedule in section 8–42–107(2), 3B C.R.S. (1995 Supp.), which is accompanied by a permanent medical impairment arising under section 8–42–107(8), 3B C.R.S. (1995 Supp.), must be converted to a whole person rating and compensated under section 8–42–107(8), when calculating permanent disability.

We granted certiorari in *Mountain City Meat Co. & Colorado Compensation Insurance Authority v. Industrial Claim Appeals Office & Oqueda*, 904 P.2d 1333 (Colo.App. 1995); *DeWitt Transportation & Colorado Compensation Insurance Authority v. Industrial Claim Appeals Office & Shropshire*, No. 94CE0033, (Colo.App. April 6, 1995) (not selected for official publication); *WCS, Inc. & Colorado Compensation Insurance Authority v. Industrial Claim Appeals Office & Hernandez*, No. 94CA1992, (Colo.App. May 4, 1995) (not selected for official publication); *Durocher v. Industrial Claim Appeals Office & Department of Revenue & Colorado Compensation Insurance Authority*, 905 P.2d 4 (Colo.App.1995); and *Monachelli v. Industrial Claim Appeals Office & Heating & Plumbing Engineers & Nationwide/Wausau Ins.*, No. 94CE0020, (Colo.App. April 6, 1995) (not selected for official publication); to review the decisions of the court of appeals, holding that, when a work-related accident results in at least one injury that is rated as a percentage of whole-person impairment, all effects of that work-related accident are to be rated as a percentage of whole-person impairment. Petitioners, Colorado Compensation Insurance Authority (CCIA) and the employers, contend that extremity injuries must be assessed under the statutory schedule even when the person has also suffered a head, neck, or torso injury. We affirm the judgment of the court of appeals in all five cases.

I.

The issue in each of these appeals is identical. The operative facts of the cases are not in dispute.

A. Oqueda

On October 23, 1992, Emiliano Oqueda, a meat-cutter for Mountain City Meat Co., lifted a one-hundred pound slab of meat and suffered an injury to his neck and shoulder. He was initially sent to a chiropractor; after seeing a physician at Clinicare, Oqueda returned to work with restrictions.

In order to determine the degree of permanent impairment and the date of maximum medical improvement,[1] Oqueda was required to see an independent medical examiner (IME).[2] *See* § 8–42–107(8)(c). The IME determined that Oqueda's date of maximum medical improvement was April 20, 1993, and evaluated Oqueda under the

---

1. The date of maximum medical improvement is the "point in time when any medically determinable physical or mental impairment as a result of injury has become stable and when no further treatment is reasonably expected to improve the condition." § 8–40–201(11.5), 3B C.R.S. (1995 Supp.). This is the point when the injured employee is no longer eligible for temporary disability benefits, but is eligible for permanent disability benefits pursuant to § 8–42–107, 3B C.R.S. (1995 Supp.).

2. Oqueda requested that the CCIA approve Dr. Donald Harder to determine Oqueda's date of maximum medical improvement. The CCIA did not respond, so Oqueda requested an independent medical examination (IME). The independent medical examiner, Dr. Stephen D. Lindenbaum, determined Oqueda's date of maximum medical improvement to be April 20, 1993.

applicable guidelines established by the Workers' Compensation Act of Colorado (the Workers' Compensation Act) to determine the degree of permanent impairment. Under the Workers' Compensation Act, injuries are generally divided into two categories: 1) injuries to extremities, which are entitled "scheduled injuries" and are rated as a percentage of injury to the extremity, section 8–42–107(2), 3B C.R.S. (1995 Supp.); and 2) injuries to the head, neck, and torso, which are rated as a percentage of injury to the whole person. § 8–42–107(8), 3B C.R.S. (1995 Supp.). Injuries to certain extremities, which are specified in section 8–42–107(8)(c.5), are also rated as a percentage of whole person impairment.

After the examination, the IME rated Oqueda's shoulder injury, a scheduled injury, as a three percent upper extremity impairment, and his neck injury, a non-scheduled injury, as a seven percent impairment of the whole person. In accordance with the American Medical Association Guides to the Evaluation of Permanent Impairment (3d ed. 1990) 16 (AMA Guides), the IME converted the three percent upper extremity impairment rating to a two percent whole person impairment rating. The IME then combined the two figures, which resulted in a nine percent impairment of the whole person.

The CCIA admitted liability for permanent partial disability benefits based only on the three percent upper extremity impairment rating and the seven percent whole person impairment rating. Oqueda objected and the matter was brought before an Administrative Law Judge (ALJ). § 8–43–201, 3B C.R.S. (1995 Supp.).

The ALJ agreed with the IME's assessment and determined that, when a scheduled injury is accompanied by a non-scheduled injury, the scheduled injury must be converted to a whole person impairment rating. The CCIA appealed, and the Industrial Claim Appeals Office Panel (ICAO panel) affirmed the ALJ's determination.[3] On Jan-

uary 26, 1995, the court of appeals affirmed the order of the ICAO panel. *Mountain City Meat Co. & Colo. Compensation Ins. Auth. v. Industrial Claim Appeals Office & Oqueda*, 904 P.2d at 1334.

### B. Shropshire

On March 3, 1992, while working as a furniture mover, Chalmers Shropshire slipped on a loading platform and fell. He landed on his head and shoulder and injured his neck and right arm. The authorized treating physician determined that Shropshire reached maximum medical improvement on January 10, 1993. In addition, the authorized treating physician assigned Shropshire's neck injury a whole person impairment rating of sixteen percent and assigned his right arm an upper extremity impairment rating of twenty-four percent. Using the AMA Guides, the authorized treating physician converted the twenty-four percent upper extremity impairment rating into a fourteen percent impairment of the whole person, and combined the two injuries into a twenty-eight percent impairment of the whole person.

The CCIA filed a Final Admission of Liability on May 18, 1993, admitting liability for benefits based on the sixteen percent whole person impairment rating for the neck injury and the fourteen percent upper extremity impairment rating for the shoulder injury. Shropshire objected to the CCIA's admission of liability and requested a hearing. The ALJ agreed with the CCIA and rejected the authorized treating physician's ratings. Thereafter, an ICAO panel modified the ALJ's order, holding that Shropshire was entitled to medical impairment benefits based upon a disability of twenty-eight percent impairment of a whole person. After review, the court of appeals affirmed the ICAO panel's ruling. *DeWitt Transp. & Colo. Compensation Ins. Auth. v. Industrial*

---

**3.** The ALJ has original jurisdiction to hear and decide all matters arising under the Workers' Compensation Act, § 8–43–201, 3B C.R.S. (1995 Supp.); the CCIA administers a fund created in the state treasury to provide permanent impairment benefits to the injured employee, § 8–45–

101(1), –102(1), 3B C.R.S. (1995 Supp.); and the ICAO has the "duty and power to conduct administrative appellate review of any order entered pursuant to [the Workers' Compensation Act]." § 8–1–102(2), 3B C.R.S. (1986 & 1995 Supp.).

*Claim Appeals Office & Shropshire,* slip op. at 1.

### C. Hernandez

On May 16, 1992, Renee Hernandez, a shift manager at Wendy's, injured her neck and arm when she slipped on an uneven floor and submerged her right elbow in hot cooking oil at the fry station. She suffered nerve damage in her arm that precludes continuous repetitive motion and fine motor tasks. As a result of the damage to her arm, Hernandez developed a neck injury. After examining Hernandez, the authorized treating physician evaluated the injury to her arm as a thirty-one percent upper extremity impairment and converted it to a nineteen percent whole person impairment. He also evaluated her neck injury and found a four percent whole person impairment. He then combined the two impairment ratings and assigned Hernandez a twenty-two percent whole person impairment rating.

The ALJ accepted the authorized treating physician's rating and ruled that, an injury to an extremity could be given a whole person permanent medical impairment rating, if the injury had a whole body effect in terms of disability. Both the ICAO panel and the court of appeals affirmed the ALJ's decision. *WCS, Inc. & Colo. Compensation Ins. Auth. v. Industrial Claim Appeals Office & Hernandez,* slip op. at 1.

### D. Durocher

On December 5, 1991, while employed by the Colorado Department of Revenue as a driver license examiner, Joseph Durocher slipped on the ice when he was leaving the office to administer a road test. As he fell, he twisted his right leg and back, sustaining injuries to his lower back, right hip, and right knee. Durocher was treated by two physicians. The physician who treated his knee performed arthroscopic surgery, and then determined that Durocher had a five percent impairment of the lower extremity, which he converted to a two percent impairment of the

whole person. On December 8, 1992, the second physician, the authorized treating physician, determined that Durocher sustained a twenty-five percent impairment of the whole person for his back and right hip injuries. After he combined the two ratings, the authorized treating physician concluded that Durocher had a twenty-seven percent whole person impairment.[4]

Upon review, the ALJ determined that the knee injury rating had already been incorporated into the back and right hip injury rating, and ruled that Durocher was entitled to a combined whole person rating of twenty-five percent. The ICAO panel modified the ALJ's order and reinstated the twenty-seven percent whole person impairment rating. On May 18, 1995, the court of appeals affirmed the ICAO panel's ruling. *Durocher v. Industrial Claim Appeals Office & Dep't of Revenue & Colo. Compensation Ins. Auth.,* 905 P.2d at 4–5.

### E. Monachelli

On August 1, 1992, while on an assignment for his employer, John Monachelli was involved in a motor vehicle accident and sustained an injury to his neck, a non-scheduled injury, and to his wrist, a scheduled injury. The authorized treating physician determined that Monachelli reached maximum medical improvement on April 7, 1993. He found a fifteen percent upper extremity impairment, which he converted to a nine percent impairment of the whole person. In addition, he found a four percent whole person impairment for the neck injury. He combined the two impairment ratings for a total of thirteen percent impairment of the whole person.

Initially, the insurance carrier, Nationwide/Wausau Insurance (Nationwide), admitted liability for permanent partial disability benefits, based on a thirteen percent whole person impairment. Shortly thereafter, Nationwide sought to withdraw its admission in order to modify its liability to a fifteen percent upper extremity impairment for the

---

4. Subsequently, on January 12, 1993, the physician sent a letter to the CCIA, rating Durocher's back and right hip injuries at a 24% whole person impairment. The ALJ resolved the discrepancy between the December and January ratings, finding that Durocher sustained a 25% impairment of the whole person.

wrist injury and a four percent whole person impairment for the neck injury. The ALJ subsequently granted Nationwide's proposed modification. An ICAO panel affirmed the ALJ's order. Upon review, the court of appeals reversed the ICAO panel's ruling based on its decision in *Mountain City Meat Co. v. Oqueda*, and held that, Monachelli was entitled to a thirteen percent whole person impairment rating. *Monachelli v. Industrial Claim Appeals Office & Heating & Plumbing Eng'rs & Nationwide/Wausau Ins.*, slip op. at 1–2.

## II.

Prior to July 1, 1991, permanent partial disability benefits were compensated according to the schedule of disability periods found in section 8–51–104(1), 3B C.R.S. (1986). The director had broad discretion in determining when permanent disability benefits commenced, section 8–51–104(2), 3B C.R.S. (1986), and whether to grant an award under the schedule or under the working unit disability provisions of section 8–51–108, 3B C.R.S. (1986).[5] *See* § 8–51–104(7), 3B C.R.S. (1986); *World of Sleep, Inc. v. Davis*, 188 Colo. 443, 445, 536 P.2d 34, 35 (1975); *London v. El Paso County*, 757 P.2d 169, 171 (Colo.App.1988). The adoption of Senate Bill 218 in the 1991 session of the General Assembly eliminated this discretion.

For injuries occurring after July 1, 1991, permanent partial disability is determined pursuant to section 8–42–107, 3B C.R.S. (1995 Supp.). Section 8–42–107(1) classifies work-related injuries into "scheduled injuries" and "non-scheduled injuries." Scheduled injuries involve impairment to the ex-

tremities and are enumerated in section 8–42–107(2). Non-scheduled injuries involve impairment to the neck, head, or torso and include any injury not specifically enumerated in the schedule. Impairment is based on a "whole person impairment rating" as set forth in the AMA Guides. § 8–42–107(8).

In general, injuries can be categorized as "scheduled injuries" or "non-scheduled injuries," however, section 8–42–107(8)(c. 5) excludes certain injuries from the schedule and provides that benefits for those injuries will be calculated pursuant to section 8–42–107(8).[6] The injuries specified in section 8–42–107(8)(c.5), will be analyzed as "non-scheduled injuries."

If all of the claimant's injuries are listed in the schedule, then section 8–42–107(2) is controlling. The authorized treating physician uses the AMA Guides[7] to determine the percentage of impairment to the member listed on the schedule. If the claimant has sustained a total loss of a member listed on the schedule, excluding those provided for in section 8–42–107(8)(c. 5), compensation will be determined by multiplying the number of weeks provided for in the schedule by the statutory weekly compensation rate. § 8–42–107(6). Conversely, if the claimant has sustained only a partial loss of a member listed on the schedule, then the claimant will receive only a percentage of the number of weeks on the schedule equal to the extremity impairment rating percentage assigned.[8]

Likewise, if none of the claimant's injuries are listed on the schedule, compensation is based on a "whole person impairment rating" as set forth in the AMA Guides. § 8–42–

---

5. The term "working unit" was replaced by the term "whole person impairment" by Senate Bill 218. *See* ch. 219, sec. 15, § 8–42–107, 1991 Colo. Sess. Laws 1291, 1309.

6. Section 8–42–107(8)(c.5) provides:
   When an injury results in the total loss or total loss of use of an arm at the shoulder, a forearm at the elbow, a hand at the wrist, a leg at the hip or so near thereto as to preclude the use of an artificial limb, the loss of a leg at or above the knee where the stump remains sufficient to permit the use of an artificial limb, a foot at the ankle, an eye, or a combination of any such losses, the benefits for such loss shall be determined pursuant to this subsection (8).

7. Section 8–42–101(3.7), 3B C.R.S. (1995 Supp.), provides, in part:

   On and after July 1, 1991, *all physical impairment ratings* used under articles 40 to 47 of this title *shall* be based on the revised third edition of the "American Medical Association Guides to the Evaluation of Permanent Impairment"*, in effect as of July 1, 1991. (Emphasis added.)

8. For example, if the claimant sustains a 20% loss of one of the scheduled injuries, the claimant is limited to 20% of the weeks listed on the schedule for that particular member.

107(8). The percentage of whole person impairment is calculated by referring to the impairment rating tables of the AMA Guides. For injuries to the upper extremity, consisting of the "hand, wrist, elbow, and shoulder," or to the lower extremity, consisting of the "foot, hind foot, which includes the ankle and the subtalar joints, the knee, and the hip," the authorized treating physician initially determines the percentage of upper or lower extremity impairment. AMA Guides 11. The authorized treating physician then uses the tables in the AMA Guides to convert the extremity impairment rating to a whole person impairment rating.[9] Medical impairment benefits for non-scheduled injuries are calculated by multiplying the whole person impairment rating percentage, the age factor in section 8–42–107(8)(e), and four hundred weeks, together. § 8–42–107(8)(d). This figure is then multiplied by two-thirds of the claimant's pre-injury average weekly wages. § 8–42–105(1), 3B C.R.S. (1995 Supp.).

When an employee sustains more than one scheduled injury in the same work-related accident, section 8–42–107(7)(a) mandates that the disabilities "be added, and [that] the injured employee shall receive the sum total thereof." Similarly, when an employee sustains more than one non-scheduled injury, the authorized treating physician uses the Combined Values Chart of the AMA Guides to combine the two whole person impairment ratings.

Here, the issue that must be resolved is how permanent disability benefits are to be calculated when a work-related accident results in both a scheduled injury and a non-scheduled injury. We agree with the court of appeals that extremity and head, neck, or torso injuries are to be assessed as whole person injuries when a claimant has sustained both types of injury.

### III.

#### A.

In *Farmers Group, Inc. v. Williams*, 805 P.2d 419, 422 (Colo.1991), we

stated that "[o]ur primary task in construing a statute is to give effect to the intent of the General Assembly"; we "should look first to the plain language of the statute." When "the language is clear and the intent appears with reasonable certainty, there is no need to resort to the rules of statutory construction." *People v. Andrews*, 871 P.2d 1199, 1201 (Colo.1994). If the statutory language is unclear or ambiguous, we take into account legislative history in determining intent. *Vega v. People*, 893 P.2d 107, 112 (Colo.1995).

The legislature often makes a legislative policy declaration at the outset of the enactment. This declaration is a guide to legislative intent. *St. Luke's Hosp. v. Indus. Comm'n of Colo.*, 142 Colo. 28, 32, 349 P.2d 995, 997 (1960). Here, section 8–40–102(1), 3B C.R.S. (1995 Supp.), provides that:

> It is the intent of the general assembly that the "Workers' Compensation Act of Colorado" be interpreted so as to assure the quick and efficient delivery of disability and medical benefits to injured workers at a reasonable cost to employers, without the necessity of any litigation, recognizing that the workers' compensation system in Colorado is based on a mutual renunciation of common law rights and defenses by employers and employees alike.

We have held that the primary purpose of the Workers' Compensation Act is to provide a speedy method of compensating employees for job related injuries, *Williams v. White Mountain Constr. Co.*, 749 P.2d 423, 428 (Colo.1988), and the statute provides the exclusive remedy for an employee who has been injured in a work-related accident. *Popovich v. Irlando*, 811 P.2d 379, 381 (Colo. 1991) (employer's compliance with statutory provisions of the Workers' Compensation Act is construed as a surrender by both the employer and the employee of any other cause of action, common-law right, or remedy). As a result, the Workers' Compensation Act is "remedial and beneficent in purpose, and should be liberally construed to accomplish its humanitarian purpose of assisting injured workers and their families." *Colora-*

---

9. For example, Table 42 provides that the loss of the leg at the hip results in a 100% impairment of the lower extremity. Table 46 takes the 100% lower extremity impairment rating and converts it to a 40% impairment of the whole person. AMA Guides 71–72.

*do Counties, Inc. v. Davis,* 801 P.2d 10, 11 (Colo.App.1990), *aff'd sub nom. County Workers Compensation Pool v. Davis,* 817 P.2d 521 (Colo.1991).

Where a statute is capable of more than one interpretation, we have held that, "it must be construed in light of the apparent legislative intent and purpose." *Colorado–Ute Elec. Ass'n, Inc. v. Public Util. Comm'n of State of Colo.,* 760 P.2d 627, 635 (Colo. 1988), *appeal dismissed,* 489 U.S. 1061, 109 S.Ct. 1333, 103 L.Ed.2d 804 (1989). We must consider the ends the statute was designed to accomplish and the consequences that would flow from an alternate construction. *Id.* "If separate clauses in the same statutory scheme may be harmonized by one construction, but would be antagonistic under a different construction, we should adopt that construction which results in harmony." *Id.;* see also *People v. Rapini,* 107 Colo. 363, 366, 112 P.2d 551, 552 (1941) ("[W]here two constructions [of a statute] are possible, by one of which the entire act may be harmonized, while the other will create discord between different provisions, the former should be adopted.").

### B.

The CCIA and the employers contend that section 8–42–107(1)(a) requires that any time an employee is involved in a work-related accident that results in a "scheduled injury," the impairment benefit for that injury must be calculated and compensated independently of the non-scheduled injury. We disagree. The court of appeals found the statute to be ambiguous and concluded that a harmonious reading could only be achieved by converting the extremity ratings to whole person ratings utilizing the AMA Guides referenced in the statute. We agree and hold that the whole person impairment methodology must be utilized when the person has sustained both types of injury.[10]

Section 8–42–107(1) provides:

*Benefits available.* (a) When an injury results in permanent medical impairment, and the employee has an *injury or injuries enumerated in the schedule* set forth in subsection (2) of this section, *the employee shall be limited* to medical impairment benefits as specified in subsection (2) of this section.

(b) When an injury results in permanent medical impairment and the employee has an *injury or injuries not on the schedule* specified in subsection (2) of this section, *the employee shall be limited* to medical impairment benefits as specified in subsection (8) of this section.

(Emphasis added.) All cases of permanent impairment fall into one of two categories: under subsection (1)(a), if all of the employee's injuries are not contained in the schedule set forth in subsection (2), injuries to the person are to be compensated pursuant to subsection (1)(b). The language of both subsections contains language of limitation. When the employee has an injury or injuries that are enumerated in the schedule, then the employee is limited to benefits specified in subsection (2). Likewise, when the employee has an injury or injuries that are not enumerated in the schedule, then the employee is limited to benefits specified in subsection (8). The focus of limitation is not the particular type of injury, but the employee. The purpose of the statute is to limit a person's recovery for the injury or injuries he or she sustained. The ambiguity requiring construction of the statute to effectuate its purposes arises because the employee may be compensated under one subsection or the other, but not both.

Section 8–42–107(8)(a), provides:

When an injury results in permanent medical impairment not set forth in the schedule in subsection (2) of this section, the employee shall be limited to medical impairment benefits calculated as provided in this subsection (8).

Again, the stated limitation is expressed in terms of the employee's total allowable recovery, in this instance, to the exclusion of the schedule.

---

**10.** In all of the cases before us, except *Monachelli,* the ICAO panel, employing a logical application of the statute, reached the same result. The court of appeals consistently made the same determination in all five cases.

In each of the five cases, the employee sustained both a scheduled injury and a non-scheduled injury. Since the employee must be compensated under section 8–42–107(2) or under section 8–42–107(8), but not both, we now evaluate which subsection applies to the cases before us. The enumerated schedule of section 8–42–107(2) regarding extremity injuries is all-inclusive. There are no provisions in the statute, nor in the AMA Guides, to add additional injuries to that list or convert a non-scheduled injury impairment rating into a scheduled injury impairment rating.

### C.

The CCIA and the employers argue that nothing in the statute explicitly provides for the conversion of the extremity impairment rating to a whole person rating. However, we must construe the statute as a whole "so as to give consistent, harmonious, and sensible effect to all its parts." *People v. Andrews*, 871 P.2d at 1201. The AMA Guides are incorporated by the statute, and they explicitly contain a table for converting extremity injuries to a whole person rating. Section 8–42–101(3.7), requires that after July 1, 1991, "all physical impairment ratings used under articles 40 to 47 of this title [the Workers' Compensation Act] shall be based on the revised third edition of the 'American Medical Association Guides to the Evaluation of Permanent Impairment', in effect as of July 1, 1991." The director of the division of workers' compensation was required by section 8–42–101(3.5)(a)(II), 3B C.R.S. (1995 Supp.), to promulgate rules establishing a system for the determination of medical impairment rating guidelines for impairment ratings based on the AMA Guides. These rules mandate that "all permanent impairment ratings shall be based upon the [AMA Guides]," and that when determining permanent physical impairment ratings, the physician shall "[u]se the instructions and forms contained in the AMA Guides." Rule XIX (A), (D), 7 C.C.R. 1101–3 (1995).

Not only do the AMA Guides espouse the principle "that all impairments affect the individual as a whole," they also state that "[p]ractically all impairment values involving several organ systems … should be combined using the Combined Values Chart unless the text gives other instructions." AMA Guides at xviii. To fully and correctly characterize the impairment, the AMA Guides provide that the evaluation should be carried out according to the directions in the Guides, utilizing the tables contained therein. In particular, the Combined Values Chart applies whenever it is necessary to express the impairment in a percentage of the whole person. AMA Guides 3. Thus, the statute contains a methodology for the conversion of an extremity rating to a whole person rating, and the addition of this rating with the head, neck, or torso rating, in ascertaining the whole person impairment award.

### IV.

Accordingly, we hold that, when an employee is involved in a work-related accident that results in both a scheduled injury and a non-scheduled injury, the scheduled injury must be converted to a whole person impairment rating and combined with the non-scheduled injury's whole person impairment rating in calculating permanent disability benefits.

The judgment of the court of appeals in all five cases is affirmed.